IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

DONNEIKA GOODACRE-DARDEN, §
Individually and as the surviving wife of §
JERMAINE DARDEN, ERIC C. §
DARDEN as the Administrator of the Estate §
of JERMAINE DARDEN, HARRIET A. §
DARDEN, Individually and as surviving §
parent of JERMAINE DARDEN, §
CHARLES H. DARDEN, Individually and §
as surviving parent of JERMAINE §
DARDEN, DASHAWN N. DARDEN §
as surviving son of JERMAINE DARDEN §
and D.D.D., a Minor, By and Through His §
Grandmother and Legal Guardian §
REGINA CROCKETT, §
§
§
Plaintiffs, §  CIVIL ACTION NO. 4:15-CV-221
§
§
v. §
§  JURY TRIAL DEMANDED
§
THE CITY OF FORT WORTH, TEXAS, §
W.F. SNOW AND J. ROMERO, §
§
Defendants. §

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

MAY 1 4 2015

CLERK, U.S. DISTRICT COURT
By_____
Deputy

## <u>PLAINTIFFS' FIRST AMENDED COMPLAINT</u>

COMES NOW, Donneika Goodacre-Darden, Individually and as the Surviving Wife of Jermaine Darden, Eric C. Darden acting as the Administrator of the Estate of Jermaine Darden, Harriet A. Darden as the surviving mother of Jermaine Darden, Charles H. Darden as the surviving father of Jermaine Darden, Dashawn N. Darden, as the surviving son of Jermaine Darden and D.D.D., a minor, and the surviving son of Jermaine Darden by and through his grandmother and legal guardian, Donneika Goodacre-Darden, Plaintiffs, complaining of Defendants, The CITY OF FORT WORTH, Texas, more particularly The CITY OF FORT WORTH Police Department ("FWPD"), Officer W.F. Snow ("Snow") and Officer J. Romero

("Romero"), individually and in their official capacities as Fort Worth police officers, and for cause would show the Honorable Court as follow:

## NATURE OF THE ACTION

1.      This is an action brought by the Plaintiffs against The CITY OF FORT WORTH, Texas and Officers Snow and Romero for their use of deadly force, unlawful arrest and detention resulting in the unjustified death of Jermaine Darden ("Darden") under the color of law in violation of his individual rights under the Fourth Amendment of the United States Constitution and in violation of his civil rights pursuant to 42 U.S.C. § 1983.  Furthermore, Plaintiffs are entitled to recover individually and as representatives for the Estate of Marquise Jones to the full extent applicable by law under the Texas Wrongful Death Statute, Tex. Civ. Prac. & Rem. Code Ann. § 71.001, et seq., the Texas Survival Statute, Tex. Civ. Prac. & Rem. Ann. Code § 71.021, and all other applicable laws complaining of the various acts listed below and for their wrongful death and survival cause of action.

2.      Plaintiffs allege that The CITY OF FORT WORTH, Texas and its policy makers, specifically Mayor Betsy Price ("Price"), former Chief of Police, Jeffrey Halstead  ("Halstead ") and the Fort Worth City Council (collectively referred herein as the "Policymakers") failed to properly supervise, screen, discipline, transfer, counsel or otherwise control officers who are known, or who should have been known, to engage in the use of deadly force, including those officers repeatedly accused of such acts. The Policymakers, specifically Mayor Price, along with former Chief of Police Halstead had a duty, but failed to implement and/or enforce policies, practices and procedures for the Fort Worth Police Department that respected Jermaine Darden's constitutional rights to assistance, protection, and equal treatment under the law.  This duty was delegated to the Fort Worth City Council who hired Mayor Price to carry out the actions and

PLAINTIFFS' FIRST AMENDED COMPLAINT                                                                    Page 2

policies of the council by overseeing the day-to-day operation of The CITY OF FORT WORTH. Defendant The CITY OF FORT WORTH and its Policymakers, specifically Mayor Price, failure to implement the necessary policies and the implementation of unconstitutional policies deprived Jermaine Darden of equal protection and due process under the Fourteenth Amendment and caused his unwarranted and excruciating physical and mental anguish and death. For these civil rights violations and other causes of action discussed herein, Plaintiffs seek answers and compensation for their damages and the wrongful death of Marquise Jones.

## PARTIES

3.      Plaintiff, Donneika Goodacre-Darden is a citizen of the United States and a resident of Fort Worth, Texas. Donneika Goodacre-Darden is the wife of Jermaine Darden, decedent, and brings this wrongful-death action pursuant to the Texas Survival Statute, Tex. Civ. Prac. & Rem. Code § 71.021, as the wife of Jermaine Darden who, at the time of his death, was a resident of Fort Worth, Texas.

4.      Plaintiff, Harriet A. Darden is a citizen of the United States and a resident of Fort Worth, Texas. Harriet A. Darden is the mother of Jermaine Darden, decedent, and brings this wrongful-death action pursuant to the Texas Survival Statute, Tex. Civ. Prac. & Rem. Code § 71.021, as the mother of Jermaine Darden who, at the time of his death, was a resident of Fort Worth, Texas.

5.      Plaintiff, Charles H. Darden is a citizen of the United States and a resident of Fort Worth, Texas. Charles H. Darden is the father of Jermaine Darden, decedent, and brings this wrongful-death action pursuant to the Texas Survival Statute, Tex. Civ. Prac. & Rem. Code § 71.021, as the father of Jermaine Darden who, at the time of his death, was a resident of Fort Worth, Texas.

6.     Plaintiff, Eric C. Darden is a citizen of the United States and a resident of Fort Worth, Texas.  Eric C. Darden is the brother of Jermaine Darden.  The distributees of the Estate of Jermaine Darden each agreed to designate Eric C. Darden to serve as independent administrator of the Estate of Jermaine Darden.

7.     Plaintiff, Dashawn N. Darden is the son of Jermaine Darden and a resident of Fort Worth, Texas and brings this wrongful-death action pursuant to the Texas Survival Statute, Tex. Civ. Prac. & Rem. Code § 71.021, as the son of Jermaine Darden who, at the time of his death, was a resident of Fort Worth, Texas.

8.     Plaintiff, D.D.D. is the minor son of Jermaine Darden and a resident of Fort Worth, Texas and brings this wrongful-death action pursuant to the Texas Survival Statute, Tex. Civ. Prac. & Rem. Code § 71.021, by and through his grandmother and legal guardian, Regina Crockett.

9.     Defendant The CITY OF FORT WORTH is a municipality located in Fort Worth, Texas.  The CITY OF FORT WORTH funds and operates the FWPD, and Mayor Price, as the mayor serves as the City's chief administrator. The Mayor is responsible for carrying out the actions and policies of the council by overseeing the day-to-day operation of the organization. Mayor Price along with former Chief of Police Halstead were responsible for the implementation of the police department's budget, policies, procedures, practices, and customs, as well as the acts and omissions, challenged by this suit.  The CITY OF FORT WORTH Police Department is also responsible for preventive, investigative, enforcement services and assuring safety for all citizens of The CITY OF FORT WORTH.  The CITY OF FORT WORTH has been served and has appeared in this case.

10.     Defendant W.F. Snow, upon information and belief, is a resident of Fort Worth, Texas, and at all times material herein was a police officer acting in the course and scope of his employment for The CITY OF FORT WORTH.  Defendant Snow is being sued in this lawsuit in both his individual and official capacity.  Snow has been served and has appeared in this case.

11.     Defendant J. Romero, upon information and belief, is a resident of Fort Worth, Texas, and at all times material herein was a police officer acting in the course and scope of his employment for The CITY OF FORT WORTH.  Defendant Romero is being sued in this lawsuit in both his individual and official capacity.  Romero has been served and has appeared in this case.

## JURISDICTION AND VENUE

12.     Jurisdiction exists in this court pursuant to 28 U.S.C. §§ 1331 and 1343 as this action is brought under, inter alia, the Fourth Amendment of the United States Constitution and 42 U.S.C. § 1983, to redress the deprivation of rights, privileges and immunities guaranteed to decedent, Jermaine Darden, by constitutional and statutory provisions.  Plaintiffs further invoke the supplemental jurisdiction of this court pursuant to 28 U.S.C. § 1367 to adjudicate pendent claims arising under the laws of the State of Texas.

13.     Venue is proper in this court because the causes of action occurred within the Northern District of Texas, Fort Worth Division.

## STATE ACTION

14.     To the extent applicable, Defendants Snow and Romero were acting under color of state law when they subjected Jermaine Darden to the wrongs, injuries and death hereinafter set forth.

## FACTS

15.     On or about May 16, 2013, Fort Worth Police Officer Danford requested a probable cause search warrant for 3232 Thannisch Avenue which was reviewed and signed into effect by Tarrant County Magistrate C. Minick.   Officer Danford requested and obtained permission to serve the warrant as a "no-knock" or "no announce warrant' although there was no sufficient evidence to justify this type of warrant.

16.     In addition, Officer Danford received permission to have the Central Zero Tolerance Unit make entry into the residence using a high dynamic technique under the presumption that there were "lookouts" across the intersection from the Darden Residence and also in the front yard.  There were no confirmed lookouts across the intersection from the Darden Residence or in the front yard necessitating a "no-knock" or "no announce warrant.'

17.     While enroute to the Darden Residence, officers of the Zero Tolerance Unit can be heard and seen making racial jokes which was captured and recorded by a head cam worn by one of the officers.  Additionally, one of the officers joked that he did not see any fried chicken restaurants which caused the unit to burst into laughter.  The racially insensitive comments were made only minutes prior to Darden's wrongful death.

18.     Upon their arrival at the Darden Residence, the Central Zero Tolerance Unit approached the front door and knocked it down with a door ram although there were no signs of danger. Defendant Snow entered the Darden Residence making a racial comment and used profanity in the presence of a number of minors who were in the Residence.  No one attempted to flee the residence nor were there any display of weapons.   Everyone fully complied with the commands of the officers but despite this, Officer Snow wrestled a startled Darden, who was

sleeping on the sofa at the time, to the ground for no lawful or legitimate reason.  Darden was not resisting nor was he ignoring the commands of Defendant Snow.

19.     Despite fully complying with the commands of Defendant Snow, Defendant Snow wrestled Darden to the ground.   Observing Darden grasping for air, several individuals who were inside the Residence yelled "he can't breathe."  Darden also advised Defendant Snow that he could not breathe but his pleas were ignored.  To add injury to the assault, Defendant Snow displayed his Conducted Energy Device and began to deploy his taser striking Darden in the back multiple times for no lawful reason.

20.     After being tasered a number of times, a nonresponsive Darden was placed into a seated position and it was apparent that he was either dead or taking his last breath.   Darden, an unarmed black male, was detained through the use of excessive and deadly force during what has come to be known as a "no-knock" warrant.  Despite pleading to the officers that he could not breathe, Officer Snow deployed his department issued taser, striking Darden in the back for no lawful or legitimate reason.  In addition to the excessive and ill-advised use of the taser, Officer Romero struck Darden numerous times and placed his knees on his neck, making it difficult and/or impossible for Darden to breathe. The deadly force was used on Darden although he did not pose an imminent threat of danger and/or harm to the arresting officers.  Officers Romero and Snow, and the other unidentified officers' use of excessive and deadly force resulted in the death of Darden.

21.     According to several eyewitnesses, Darden was not resisting nor was he attempting to flee or attack Defendants Snow and Romero when he was choked, kicked and tased multiple times in the back.

22.     As a result of Defendants Snow and Romero's deadly and unlawful attack on

Darden, Darden sustained multiple injuries, which led to his painful death.

23.     Defendant, The CITY OF FORT WORTH and FWPD have a longstanding record of not providing FWPD officers with adequate training, not preventing excessive force and extrajudicial killings by Fort Worth Police officers.   The Mayor of Fort Worth had in fact delegated policy-making authority to former Chief of Police Halstead, giving him the responsibility for setting training policies and knew that there were training issues.  Defendants Snow and Romero's inadequate training resulted in the death of Darden.

24.     There is no evidence that Defendants Snow and Romero or any third party were in any danger of imminent death or great bodily harm.

25.     The FWPD did not provide adequate training to Defendants Snow and Romero in the proper use of a taser and non-deadly force.

26.     The FWPD did not provide adequate training to Defendants Snow and Romero on proper arrest and confrontation techniques.

27.     The CITY OF FORT WORTH knew or should have known that the training was inadequate or nonexistent.

28.     As made clear by at least four eyewitnesses, Darden posed no threat of imminent death or great bodily harm to Defendants Snow and Romero or any other person in the immediate area.  There is no evidence that Defendants Snow and Romero or any third feared for their lives.

29.     At the time Defendant Snow began to deploy his taser striking Darden in the back multiple times, there had been no previous interaction between Darden and Defendant Snow, and at no time did Darden resist in any way to justify Defendant Snow's use of deadly force.

30.     Defendants Snow and Romero's unlawful and unwarranted acts, lack of training and the official customs or policies of the FWPD caused Darden's wrongful death.

31.     Plaintiffs would also show that at all times material hereto, Defendants Snow and Romero were acting under the color of law when they caused Darden's death.

32.     Plaintiffs would further show that Defendants Snow and Romero's actions were the result of, or within the scope of, wrongful and reckless customs, policies, practices and/or procedures of the FWPD in regards to the use of deadly force for which The CITY OF FORT WORTH and the Policymakers, specifically, Mayor Price along with former Chief of Police Halstead, knew or should have known but never provided the requisite and proper training.

33.     Moreover, no reasonably competent official would have concluded that the actions of Defendants Snow and Romero and other Fort Worth police officers described herein would not violate Darden's constitutional rights.  In other words, no reasonably prudent police officer under similar circumstances could have believed that Defendants Snow and Romero's conduct was justified nor was the treatment of Darden, reasonable.

34.     There is no evidence that Defendants Snow and Romero or anyone else were in danger of imminent death or great bodily harm.  There were no struggles that would indicate that the use of excessive and/or deadly force was justified.

35.     Darden posed no risk to Defendants Snow and Romero or any other person in the immediate area.  Darden did not attempt to harm Defendants Snow and Romero and was not committing a crime or reasonably believed to have committed a crime when the officer tased him in the back.

36.     Defendants Snow and Romero's unlawful and unwarranted acts, lack of training and the official customs or policies of the FWPD caused Plaintiffs' injuries.  As a direct and

proximate result of the Defendants' conduct, Plaintiffs have sustained substantial damages and pecuniary loss.

37.     Darden was thirty four (34) years old when he was killed by Defendants Snow and Romero.  He had a reasonable life expectancy of living at least 50 more years to age 84. Darden's life ended with his tragic death.  He leaves behind two sons and a wife.

38.     During his lifetime, Darden was industrious and energetic, a good son, husband, father and provider. He performed numerous and usual tasks in and about the family residence and gave advice, counsel, comfort, care, and protection to his parents and family. In all reasonable probability, he would have continued to do so, providing for and supporting his sons at least until they attained adulthood, and probably longer, as he planned to provide them with all the costs incident to attending college.

39.     Darden's sons, Dashawn N. Darden and D.D.D., have suffered pecuniary loss from the ***death*** of their father, including loss of care, maintenance, support, services, advice, counsel, and contributions of a pecuniary value that they would, in reasonable probability, have received from their father during his lifetime had he lived.  They have suffered additional losses by virtue of the destruction of the parent-child relationship, including the right to love, affection, solace, comfort, companionship, society, emotional support, and happiness. They will suffer anguish, grief, and sorrow as a result of their father's ***death*** and is likely to continue to suffer for a long time in the future. For these losses, Plaintiffs seek damages in a sum in excess of the minimum jurisdictional limits of the court.

40.     As a result of Darden's untimely ***death***, Donneika Goodacre-Darden has suffered pecuniary loss from the ***death*** of decedent, including loss of care, maintenance, support, services, advice, counsel, and contributions of a pecuniary value that she would, in reasonable probability,

have received from Darden during decedent's lifetime had he lived.  In addition, she has suffered loss of consortium and damage to the husband-wife relationship, including loss of affection, solace, comfort, companionship, society, assistance, sexual relations, emotional support, love, and felicity necessary to a successful marriage. She has suffered mental anguish, grief, and sorrow as a result of Darden's ***death*** and is likely to continue to suffer

41.     Upon information and belief, the FWPD have not implemented policies and procedures to aggressively curtail death and/or injuries as a result of the improper use of a taser.

## EXCESSIVE FORCE BY DEFENDANTS SNOW AND ROMERO

### COUNT I-42 U.S.C. § 1983

42.     Plaintiffs incorporate by reference paragraphs 1 through 41 as if fully set forth herein.  Plaintiffs would show that Defendants Snow and Romero's actions on the occasion in question were wrongful and constituted gross negligence in depriving Darden of his constitutional rights, as alleged more fully below.

43.     Plaintiffs would show that at all times material hereto, Defendants Snow and Romero had a duty to avoid infliction of unjustified bodily injury to Darden, to protect his bodily integrity and to not trample on his constitutional rights.

44.     Plaintiffs would show that Defendants Snow and Romero failed to act as a reasonable police officer would have acted in the same or similar circumstances.  That is, Defendants Snow and Romero, without justification and the need to do so, used excessive and deadly force as described above and killed Darden without probable cause and/or legal justification.  Darden never made any threatening gestures towards Defendants Snow and Romero and did not posed an immediate threat to the safety of Defendants Snow and Romero or others.

45.    Defendant Snow was not provoked when he tasered Darden in the back for no lawful reason.  Darden died as a result of the deadly force.  The excessive and deadly force used by Defendants Snow and Romero was not reasonable, justified nor was it necessary under the circumstances.

46.    Defendants Snow and Romero's actions were not objectively reasonable because they followed a procedure designed to inflict excessive and deadly force in restraining individuals in a non-life threatening situation.

47.    Plaintiffs would show that Defendants Snow and Romero denied Darden his right to be free from deprivation of his rights without due process of law, in violation of the Fourth Amendment to the United States Constitution.  Plaintiffs would further show that Defendants Snow and Romero were acting within custom, policy, practice and/or procedure of the FWPD at the time of the incident in regards to the use of deadly force as authorized and/or ratified by the Policymakers, specifically, Mayor Price and former Chief of Police Halstead.

48.    The force used by the Defendants Snow and Romero was unnecessary, excessive and  unreasonable under the circumstances, as Darden did not posed an immediate threat to the safety of  Defendants Snow and Romero or  others, had not committed a crime, did not require the use of such excessive and deadly force.  Defendants Snow and Romero embarked on a willful, malicious, reckless and outrageous course of conduct that was intended to cause and, in fact, caused Darden and Plaintiffs to suffer extreme and severe mental and emotional distress, agony and anxiety.

49.    As a result of these Constitutional violations to Darden and the injuries he sustained, Plaintiffs seek compensation as set forth more specifically in the section of this Complaint entitled "Damages."

## FAILURE TO TRAIN BY THE CITY OF FORT. WORTH
### COUNT II 42 U.S.C. § 1983

50. Plaintiffs incorporate by reference paragraphs 1 through 49 as if fully set forth herein.

51. Defendants Snow and Romero and other Fort Worth Police officers who were at the Darden Resident, were acting under color of law and acting pursuant to customs, practices and policies of The CITY OF FORT WORTH and the FWPD in regards to the use of deadly force and the wrongful detention of Darden as authorized and/or ratified by the Policymakers, specifically Mayor Price and former Chief of Police Halstead. Darden was deprived of rights and privileges secured to him by the Fourteenth Amendment to the United States Constitution and by other laws of the United States, by The CITY OF FORT WORTH failing to provide proper training in the proper use of tasers, deadly force and wrongful detentions in violation of 42 U.S.C. § 1983 and related provisions of federal law and in violation of the above cited constitutional provisions.

52. With respect to the claims made the basis of this lawsuit, The CITY OF FORT WORTH and the FWPD failed to adequately train its employees regarding the proper use of tasers, deadly force and wrongful detentions. The failure to train its employees in a relevant respect reflects a deliberate indifference to The CITY OF FORT WORTH, FWPD, Mayor Price and former Chief of Police Halstead to the rights of the City's inhabitants and is actionable under 42 U.S.C. § 1983.

53. Defendant The CITY OF FORT WORTH, FWPD and former Chief of Police Halstead under the direction of Mayor Price developed and maintained a policy of deficient training of its police force in the use of force, including the proper use of tasers, deadly force and wrongful detentions and apprehension of individuals. The CITY OF FORT WORTH's training

is designed and implemented by Mayor Price and former Chief of Police Halstead to act in this regard.

54.    The CITY OF FORT WORTH, FWPD, former Chief of Police Halstead and Mayor Price' failure to provide adequate training to its police officers regarding the proper use of tasers, deadly force and wrongful detentions reflect deliberate indifference by the Policymakers and reckless and conscious disregard for the obvious risk that officers would use excessive or deadly force on citizens and made the violations of Darden's constitutional rights, including his death, a reasonable probability.

55.    Plaintiffs would show that Defendants Snow and Romero and the individual officers' actions were the result of, or within the scope of, wrongful and reckless customs, policies, practices and/or procedures for which The CITY OF FORT WORTH, FWPD, former Chief of Police Halstead and Mayor Price knew or should have known but never provided the requisite and proper training.   There's been a clear pattern of similar incidents, which have resulted in at least four deaths.

56.    On information and belief, Defendant The CITY OF FORT WORTH, FWPD, former Chief of Police Halstead and Mayor Price, acting through official policies, practices, and customs, and with deliberate, callous, and conscious indifference to the constitutional rights of Darden failed to implement and/or enforce the policies, procedures; and practices necessary to provide constitutionally adequate protection and assistance to Darden during his struggle to survive and implemented policies, procedures, and practices which actually interfered with or prevented with or prevented Darden from receiving the protection, assistance and care he deserved.  In fact, shortly after the death of Darden, Chief of Police Halstead made a presentation at a Taser conference where he falsely represented how many times Darden was shot with a

taser, he misrepresented what happened at the time Darden was wrestled to the ground and he went on to say that Darden would have died anyway. In other words, Chief of Police Halstead did not find anything wrong with an unarmed male dying although he was not committing a crime.

57.     For instance, the following conduct, policies, and customs, *inter alia*, by Defendants violated Darden's constitutional rights:

a. The CITY OF FORT WORTH and the FWPD's failure to adequately train or discipline its officers;

b. Defendants' policy on the proper use of deadly force;

c. Defendants' inadequate training regarding the proper use of Tasers;

d. Failure to conduct the type of investigation that would have been conducted had he not been a minority or a resident in a high crime area;

e. Failure to get more police employees properly trained not to wrongfully detain an individual.

f. Using deadly force against Darden who was not resisting;

g. Using deadly force against Darden who had committed no crime;

h. Using deadly force against Darden when he had already been restrained.

58.     In addition, Defendant CITY OF FORT WORTH, as applicable, failed and refused to implement customs, policies, practices or procedures, and failed to train its personnel adequately on the appropriate policies, practices or procedures regarding the proper use of tasers, deadly force and the wrongful detention of individuals. In so doing, Defendant The CITY OF FORT WORTH knew that it was acting against the clear dictates of current law, and knew that as a direct consequence of their deliberate decisions, the very situation that occurred -- *i.e.*, Darden's death-- in all reasonable probability would occur.

59.     Defendants' actions demonstrate that before his death Darden was the victim of purposeful discrimination, either because of his race and/or gender, or due to an irrational or arbitrary state classification unrelated to a legitimate state objective.

60.     Additionally, no rational basis existed for The CITY OF FORT WORTH and the FWPD's alleged policies of affording minorities less police protection or assistance than other crime victims or giving these victims less investigative attention than other victims. Furthermore, unlike what Defendants Snow and Romero did, no reasonably prudent police officer, under similar circumstances, would have used deadly force.  Moreover, no reasonably competent official would have concluded that the actions of The CITY OF FORT WORTH and Defendants Snow and Romero described herein would not violate Darden's rights.  In other words, no reasonably officer, under similar circumstances, could have believed that their conduct was justified.

61.     The CITY OF FORT WORTH'S failure to properly train and discipline its police officers regarding the proper use of a taser, deadly force and wrongful detention were the proximate cause of the violations of Darden's constitutional rights.

## NEGLIGENCE
## COUNT III.

62.     Plaintiffs incorporate by reference paragraphs 1 through 61 as if fully set forth herein.

63.     The CITY OF FORT WORTH is a governmental unit that employed Defendant Snow to serve as a police officer.

64.     At the time of Darden's injury, Defendant Snow was acting in the course and scope of his employment.

65.    Defendant Snow negligently detained Darden and created an unnecessary hostile environment.

66.    Defendant Snow's negligence was the result of the use of his departmental issued taser, an item of tangible personal property.

67.    Defendant Snow's negligence occurred when Defendant The CITY OF FORT WORTH and the FWPD issued the taser to Defendant Snow, an individual known not to be fit to serve as a police officer.

68.    Defendant Snow would be personally liable to plaintiff under Texas law.

69.    The CITY OF FORT WORTH and the FWPD furnishing the tangible personal property to Defendant Snow proximately caused Darden's death.

70.    As a direct cause and result of the breach of duty by The CITY OF FORT WORTH as set forth herein, Plaintiffs incurred extreme pain and injuries for which they seek compensation as set forth more specifically in the section of this Complaint entitled "Damages."

## GROSS NEGLIGENCE
### COUNT IV

71    Plaintiffs incorporate by reference paragraphs 1 through 70 as if fully set forth herein.

72.    Defendants Snow and Romero had a duty to employ only reasonable measures in the treatment of the decedent.

73.    Notwithstanding said duties, Defendants Snow and Romero acted in a wanton and willful manner, exhibiting such carelessness and recklessness as to evince a conscious disregard for the life and safety of Stokes.

74.    Defendants Snow and Romero were aware that Darden had not committed a crime and they were not facing any imminent or serious threat of bodily harm or death.  Thus, they

knew or should have known that they had no right to use any force whatsoever with respect to Darden. They nonetheless illegally apprehended Darden through their use of deadly force.

75. Defendants Snow and Romero knew or should have known that their course of action would place Darden in grave danger of serious injury, which it did.

76. As a direct and proximate result of the gross negligence of Defendants Snow and Romero, Plaintiffs have suffered damages.

**PUNITIVE/EXEMPLARY DAMAGES**
**COUNT V**

77. Plaintiffs incorporate by reference paragraphs 1 through 76 as if fully set forth herein. Additionally and in the alternative, the conduct of Defendants Snow and Romero was done with malice. As such, Plaintiffs request punitive and exemplary damages to deter this type of conduct in the future. In the alternative, such heedless and reckless disregard of Darden's rights, safety and welfare is more than momentary thoughtlessness, inadvertence or misjudgment. Such unconscionable conduct goes beyond ordinary negligence, and as such Plaintiffs request punitive and exemplary damages are awarded against Defendants Snow and Romero in a sum which is within the jurisdictional limits of this court.

**TEXAS SURVIVAL ACTION**
**COUNT VI**

78. Plaintiffs incorporate by reference paragraphs 1 through 77 as if fully set forth herein.

79. Plaintiff Eric C. Darden is the Representative for the estate of Jermaine Darden.

80. Darden died as a result of the Defendants' wrongful conduct.

81. Darden would have been entitled to bring this action against the Defendants if he had lived.

82.     Pursuant to Tex. Civ. Prac. & Rem. Code Ann. § 71.021, the decedent's right of action for wrongful and negligent conduct against the Defendants survive in favor of the estate of the deceased.

83.     Defendants are liable to the estate of the deceased for the loss of Darden's life, pain and suffering, and the violation of his civil rights.  Plaintiffs seek compensation as set forth more specifically in the section of this Complaint entitled "Damages."

## TEXAS WRONGFUL DEATH ACT
## COUNT VII

84.     Plaintiffs incorporate by reference paragraphs 1 through 83 as if fully set forth herein.

85.     By reason of Defendants Snow and Romero's wrongful conduct of killing Darden without the threat of imminent death or serious bodily harm, Defendants are liable for damages.

86.     Defendants Snow and Romero's conduct that caused Darden's death was a producing cause of injury, which resulted in the following damages: loss of a family relationship, love, support, services, emotional pain and suffering, and for their acts and infliction of emotional distress caused by the wrongful killing of Darden.

87.     Plaintiffs seek compensation as set forth more specifically in the section of this Complaint entitled "Damages."

## DAMAGES ALL DEFENDANTS
## COUNT VIII

88.     Plaintiffs incorporate by reference paragraphs 1 through 87 as if fully set forth herein.  Defendants' acts and/or omissions were a proximate cause of the following Injuries suffered by Plaintiffs and decedent:

a. Actual damages;

b. Loss of affection, consortium, comfort, financial assistance, protection, affection and care;

c. Pain and suffering and mental anguish suffered by Darden prior to his death;

d. Mental anguish and emotional distress suffered by Plaintiffs;

e. Loss of quality of life;

f. Funeral and burial expenses;

g. Loss of service;

h. Loss of earnings and contributions to Plaintiffs;

i. Exemplary and punitive damages as well as reasonable attorneys' fees and costs of court;

j. Pursuant to 42 U.S.C. §1988, and other applicable laws, Plaintiffs should be awarded reasonable attorney's fees for the preparation and trial of this cause of action, and for its appeal, if required;

k. Prejudgment interest; and

l. Post judgment interest.

89.     Plaintiffs seek unliquidated damages in an amount that is within the jurisdictional limits of the court.

## COSTS AND ATTORNEY FEES

90.     Plaintiffs incorporate by reference paragraphs 1 through 89 as if fully set forth herein.  Plaintiffs are entitled to an award of attorney fees and costs under 42 U.S.C. § 1988(b).  As such, Plaintiffs request the Court to award costs and attorney fees incurred in Plaintiffs' prosecution of this litigation.

## JOINT AND SEVERAL LIABILITY

91.     Plaintiffs incorporate by reference paragraphs 1 through 90 as if fully set forth herein.  Plaintiffs would show that the Defendants were jointly and severally liable for the negligence and gross negligence, which was the proximate cause of Plaintiffs' injuries.

## CONDITIONS PRECEDENT

92.     Plaintiffs reserve their rights to plead and prove the damages to which they are entitled to at the time of trial.  All conditions to Plaintiffs' recovery have been performed or have occurred.

## TRIAL BY JURY

93.     Plaintiffs have paid a jury fee and demands trial by jury.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that Defendants be cited to appear and answer herein; that upon final trial hereof Plaintiffs have and recovers judgment from Defendants; actual damages, exemplary damages, pre-judgment interest at the legal rate; interest on said judgment at the legal rate; costs of court; and such other and further relief, both general and special, at law and in equity, to which Plaintiffs may show themselves justly entitled.

Respectfully submitted,

By:  /s/ Daryl K. Washington
DARYL K. WASHINGTON
State Bar No. 24013714
**LAW OFFICE OF DARYL K. WASHINGTON, P.C.**
325 N. St. Paul St., Suite 1975
Dallas, Texas  75201
214 880-4883
214-751-6685 - fax

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on May 13, 2015, the foregoing pleading was filed with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to accept this Notice as service of documents by electronic means.

/s/ Daryl K. Washington
DARYL K. WASHINGTON