ORIGINAL 

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| ERIC C. DARDEN as the Administrator of the Estate of JERMAINE DARDEN, | § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 4:15-CV-221-A |
| v. | § § § | JURY TRIAL DEMANDED |
| THE CITY OF FORT WORTH, TEXAS, et al., | § § § | |
| Defendants. | § § | |

### PLAINTIFF'S MOTION TO STRIKE AND/OR EXCLUDE DEFENDANTS' DESIGNATED EXPERT AND ACCOMPANYING TESTIMONY

Eric C. Darden files this motion to strike and/or exclude the testimony of Dr. Tasha Z. Greenberg ("Greenberg"), and in support thereof shows the Court as follows:

## I.    SUMMARY OF ARGUMENT

Greenberg's testimony does not meet the requirements of FED.R.EVID. 702 and *Daubert* because (1) she is not qualified to give expert opinions on certain matters for which she is being offered; (2) it is not based upon scientific, technical or other specialized knowledge that will assist the trier of fact to understand the evidence or to determine a fact in issue; and (3) it is not based on sufficient facts or data and is not the product of reliable principles and methods she has applied reliably to the facts of the case. Plaintiff further contends that the proposed testimony should be excluded pursuant to FED.R.EVID. 403 because consideration of the testimony disguised as expert testimony will result in confusion of the issues and misleading the jury.

## II.      ARGUMENT AND AUTHORITIES

### A.      Governing Principles Applicable to Defendants' Proffer of This Testimony.

*Daubert* and Federal Rule of Evidence 702 require that trial courts perform a "gate-keeping role" when considering the admissibility of expert testimony. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993). Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED.R.EVID. 702. The court's gate-keeping role is two-fold. First, the court must determine whether the testimony is reliable. See *Daubert*, 509 U.S. at 590. The reliability analysis focuses on whether the reasoning or methodology underlying the testimony is scientifically valid. *Id.* A district court assessing the admissibility of expert testimony under FED.R.EVID. 702 serves a "gatekeeping" function: "it is charged with 'the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir.2002) (quoting *Daubert* 509 U.S. at 597. The proponent of the testimony must establish, by a preponderance of the evidence, that the expert's testimony is reliable. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir.1994). In addition, a court may consider "whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying" because the former "provides important, objective proof that the research comports with the dictates of good science." *Smelser v. Norfolk Southern Railway*, 105 F.3d 299, 303 (6th Cir.1997). Another factor that may be considered by the court is "[w]hether the expert has adequately accounted for obvious alternative explanations." FED.R.EVID. 702 advisory committee's note (citing *Claar v. Burlington N.R.R.*, 29 F.3d 499 (9th Cir.1994)). Finally, the court may consider "[w]hether the expert 'is being as careful as he would be in his regular professional

work outside his paid litigation consulting.'" FED.R.EVID. 702 advisory committee's note (quoting *Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940, 942 (7th Cir.1997)). The Supreme Court has emphasized that, in assessing the reliability of expert testimony, whether scientific or otherwise, the trial court may consider one or more of the *Daubert* factors when doing so will help determine that expert's reliability. *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 147 (1999).

The second prong of the gate-keeping role requires an analysis of whether the expert's reasoning or methodology can be properly applied to the facts at issue, that is, whether the opinion is relevant. See *Daubert*, 509 U.S. at 591-93. This relevance requirement ensures that there is a "fit" between the testimony and the issue to be resolved by the trial. See *United States v. Bonds*, 12 F.3d 540, 555 (6th Cir.1993). Thus, an expert's testimony is admissible under Rule 702 only if it is predicated upon a reliable foundation and is relevant. The testimony sought to be excluded through this motion violates each of the principles discussed above.

B.      **The Nature of The Alleged Expert Testimony Sought to Be Introduced.**

On or about May 3, 2016, Defendants served Plaintiff with a copy of Greenberg's expert report (the "Greenberg Report"). See Greenberg Report attached as Exhibit 1. In the Greenberg Report, she indicates that she was retained to review and comment on the autopsy that had been performed at the Tarrant County Medical Examiner's Office ("TCME") office on May 17, 2013. However, for the reasons explained herein, Plaintiff asks that the Court exclude Greenberg's opinions and testimony.

C.      **Additional Grounds upon Which to Exclude Defendant's Expert.**

1.      **Greenberg's testimony is not grounded on sufficient facts or data and is not the product of reliable principles and methods.**

An expert's testimony must "fit" the facts of the case. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742–43 (3d Cir.1994).   To assess reliability of expert testimony, courts consider whether the expert opinion is based on methods and procedures of science rather than the expert's subjective belief or unsupported speculation. *In re Paoli*, 35 F.3d at 742. Factors guiding this analysis include: (1) whether the method features a testable hypothesis; (2) whether the

method has been subjected to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the technique is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the expert's qualifications to testify based on the methodology; and (8) the method's history of non-judicial uses. Id. at 742 n. 7; *see also Salamone v. Wal–Mart Stores East, LP*, 2011 WL 2787788, at *1 (E.D.Pa. July 15, 2011).  Greenberg's testimony fails each of these elements. Expert opinions are admissible only if they are the product of reliable principles and methods. FED R.EVID. 702 advisory committee's note; *Daubert*, 509 U.S. at 591- 95. The Texas Supreme Court has also held "expert testimony is unreliable if it is not grounded 'in the methods and procedures of science' and is no more than 'subjective belief or unsupported speculation.'" *Exxon Pipeline Co. v. Zwahr*, 88 S.W.3d 623, 629 (Tex. 2002) (quoting *Robinson*, 923 S.W.2d at 556 (quoting *Daubert*, 509 U.S. at 590)).

As demonstrated in Greenberg's Report she did not use a complete, reliable or acceptable methodology that other experts would use. The record is also clear that even if Greenberg does possess the requisite FRE 702 expertise in some areas, she is not an expert in all areas in which she purports to provide testimony. Much of her testimony ignores undisputed facts, is not relevant or reliable, was prepared strictly for this litigation and is tailored solely to benefit defendants in this litigation.

**2.    Greenberg should not be permitted to give opinions on XLR-11, (1-(5-fluoropentyl)-1H-indol-3-yl) (2,2,3,3-tetramethylcyclopropyl) methadone, also known as 5-fluoro UR-144 or 5-FUR-144.**

In the Greenberg Report, she makes the following subjective and arbitrary statements, among others:[1]

1.    XLR-11, (1-(5-fluoropentyl)-1H-indol-3-yl) (2,2,3,3-tetramethylcyclopropyl) methadone, also known as 5-fluoro UR-144 or 5-FUR-144, is a synthetic

---

[1] These paragraphs are numbered here for convenience and do not appear in the Greenberg Report numbered in this manner.

4

tetrahydrocannabinol (THC) in the human system. It has been reported that the toxicity of synthetic cannabinoid, however, may be greater than THC due to higher potency, unregulated and varied dose preparation and purity on the vegetable matter and stronger activity on the cannabinoid receptors. There have been significant toxicological findings attributed to synthetic cannabinoid exposure that have not been seen with typical recreational marijuana usage, including acute nephrotoxicity, adverse psychoactive responses including anxiety, psychosis and hallucination, tachycardia or rapid heart rate, myocardial infarction, respiratory depression, seizures, suicidal ideations and death. **The contribution of the XLR-11 synthetic cannabinoid to death in this case is uncertain.**

3.  The cause of death was ruled as sudden cardiac death associated with hypertensive atherosclerotic cardiovascular disease and application of restrain, with obesity, hepatic steatosis and chronic thyroiditis as contributory conditions. The manner of death was ruled as natural.

As the Court can observe, these opinions are inadmissible under Rule 702, especially considering that most explicitly address legal conclusions, interpret legal issues, or are conclusions to questions the jury will decide at trial, e.g. what contributed to Jermaine Darden's death. As noted above, Greenberg has very limited knowledge of THC and was unable to give an opinion as to the contribution of the XLR-11 synthetic cannabinoid to Jermaine Darden's death. *Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir.2003) ("expert testimony as to legal conclusions that will determine the outcome of the case is inadmissible").

Accordingly, Greenberg should be precluded from providing any testimony or opinions as

to whether XLR-11 synthetic cannabinoid contributed to Jermaine Darden's death.

### 3. Greenberg generally is not qualified and/or did not apply a proper methodology to provide expert opinions.

Before certifying an expert and admitting his or her testimony, a district court must ensure that the requirements of Federal Rule of Evidence 702 have been met. See *Daubert* 509 U.S. at 592–93. The Fifth Circuit holds that "[t]o qualify as an expert, 'the witness must have such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth.'" *United States v. Bourgeois*, 950 F.2d

980, 987 (5th Cir.1992) (second alteration in original) (quoting *United States v. Johnson*, 575 F.2d 1347, 1361 (5th Cir.1978)). As a rule, expert testimony must be based on the expert's specialized knowledge, training, experience, and first-hand observation while supported by solid evidence in the scientific community." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 247 (5th Cir.2002).

Ultimately, the trial court's duty is to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire* 526 U.S. 137. Furthermore, although a witness may be qualified as an expert in one area of expertise, the expert may be precluded from offering opinions beyond that area of expertise or which are not founded on a reliable methodology. See, e.g*., Kumho Tire*, 526 U.S. at 154-55; *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1317-19 (11th Cir.1999); *Weisgram v. Marley Company*, 169 F.3d 514, 518 (8th Cir.1999); *Cummins v. Lyle Indus.*, 93 F.3d 362, 371 (7th Cir.1996). Nor, may an expert go beyond the scope of his expertise in giving his opinion. *First United Fin. Corp. v. U.S. Fid. & Guar. Co.*, 96 F.3d 135, 136 (5th Cir.1996).

As explained herein, there is nothing to indicate that Greenberg either is qualified to give, or has adequate scientific basis for, her conclusory opinions. *See Smith v. Rasmussen*, 249 F.3d 755, 758-59 (8th Cir.2001). As the Supreme Court held in *General Electric Co. v. Joiner*, 522 U.S. 136 (1997):

> [N]othing either in Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.

*Joiner*, 522 U.S. at 146. *See J.B. Hunt Transp., Inc. v. General Motors Corp.*, 243 F.3d 441, 444 (8th Cir.2001) ("Expert testimony that is speculative is not competent proof and contributes nothing to a legally sufficient evidentiary basis.") (citing *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1057 (8th Cir.2000); *In re Air Crash at Little Rock Ark.*, 291

F.3d 503, 514 (8th Cir.2002) (there must be adequate nexus between scientific theory and subject of opinion); *Clark v. Takata Corp.*, 192 F.3d 750, 756-57 (7th Cir.1999); *Weisgram v. Marley Co.*, 169 F.3d 514, 521 (8th Cir.1999) (expert testimony not reliable where there is lack of nexus between theory and conclusion).

To begin with, Greenberg has not shown herself to have any significant knowledge of XLR-11 synthetic cannabinoid. She simply points out in her report what's been reported. Additionally, Greenberg has not adequately explained what methodology she actually uses to determine that Jermaine Darden died of natural causes. Thus Greenberg has not established that she is qualified to perform in this matter.

Second, The Greenberg Report claims that the application of restrain, with obesity, hepatic steatosis and chronic thyroiditis noted as a contributory condition yet she makes no mention that this would not be consistent with ruling a death as natural. Greenberg did not take into account that multiple officers were on top of Mr. Bishop while he was placed face down on the ground. Greenberg did not consider whether Officer punching Darden in the face multiple times and kicking him in the mouth was a contributing factor to Darden's death. Greenberg did not make mention of multiple individuals in the house, including Darden, advised the officers that Darden could not breathe and has asthma but despite this was not provided immediate medical attention by the officers, including the administering of CPR, which could have contributed to Darden's death. Greenberg did not mention the impact of tasing an individual who indicated he could not breathe or the resulting injuries from the tasers being lodged deep in Darden's back, causing possible spinal cord injury. Greenberg has no medical evidence that Darden is headed for a premature death. These failures mandate that Greenberg's testimony be excluded since her opinions are not sufficiently tied to the facts or supported by other evidence in the record. See *Daubert*, 509 U.S. at 591; *Young v. Brand Scaffold Servs.*, 2009 WL 4674053 (E.D.Tex. Mar.16, 2009); *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009) (holding that "where an expert's opinion is based on insufficient information, the analysis is

unreliable"). Thus, the data and methodology that Greenberg relied upon in reaching her opinions are insufficient and, therefore excludable. An expert opinion is properly excluded where it relies on an assumption that is unsupported by evidence in the record and is not sufficiently founded on facts. *See Guidroz-Brault v. Mo. Pac. R.R. Co.,* 254 F.3d 825, 829-31 (9th Cir. 2001); *Greenwell v. Boatwright,* 184 F.3d 492, 497 (6th Cir.1999) ("Expert testimony, however, is inadmissible when the facts upon which the expert bases his testimony contradict the evidence

### 4.   Greenberg's subjective opinions on XLR-11, (1-(5-fluoropentyl)-1H-indol-3-yl) (2,2,3,3-tetramethylcyclopropyl) methadone, also known as 5-fluoro UR-144 or 5-FUR-144 and when Darden became unresponsive are not expert testimony and also cannot serve as the basis for an expert report.

In providing her testimony Greenberg also made various statements as to when Darden became unresponsive and whether XLR-11 synthetic cannabinoid contributed to Jermaine his death.  Greenberg does not dispute the hospital notes that indicated that Darden became unresponsive during the second taser deployment.  Thus, any opinion from Greenberg regarding the cause of Jermaine Darden's death would be simply conclusory and  inadmissible. *See Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 421-22 (5th Cir. 1987) ("it is not so simply because 'an expert says it is so ...; if an expert brings to the court 'little more than his credentials and a subjective opinion,' his opinion amounts to no evidence"). Although Rule 702 does not require absolute certainty, it does mandate that the proffered knowledge be based on "good grounds" and that the testimony is "more than speculative belief or unsupported speculation." *United States v. Posado*, 57 F.3d 428, 433 (5th Cir.1995)(citing *Daubert*, 509 U.S. at 589-90). In addition, it would be prejudicial for Greenberg simply to express her subjective thoughts in front of a jury on these subject matters.

### 5.   Greenberg's testimony is also inadmissible under FED.R.EVID. 403.

Greenberg's purported expert testimony should be excluded also because its probative value, if any, is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. FED.R.EVID. 403; *Daubert*, 509 U.S. at 595 ("Expert evidence can

be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses."); *see also, E.E.O.C. v. U-Haul Co. of Texas*, 2005 WL 2860987 (S.D.Tex. 2005); *N. Dallas Diagnostic Ctr. v. Dewberry*, 900 S.W.2d 90, 94 (Tex.App.—Dallas 1995, writ denied) ("courts should exclude . . . evidence [when] the expert's opinion would be more likely to prejudice or confuse than to assist the trier of fact."). A review of the Greenberg Report shows that it contains legal and subjective conclusions. Greenberg's strained attempt to minimize the impact of placing pressure on Darden's back while he's being held down on the ground, face first; tasing Darden multiple times, although he's warned the officers that he has asthma and can't breathe; punching Darden in the face multiple times and kicking him in the mouth and not providing Darden immediate medical attention clearly evinces that her testimony is specially tailored to suit defendants' litigation strategy of minimizing damages, without resort to the true facts. *See McLean* 224 F.3d at 800-01 ("[A]n expert's opinion must be supported by more than subjective belief and unsupported speculation and should be supported by good grounds, based on what is known.") (quoting *Pomella v. Regency Coach Lines, Ltd.*, 899 F.Supp. 335, 342 (E.D.Mich.1995)). An expert opinion is properly excluded where it relies on an assumption that is unsupported by evidence in the record and is not sufficiently founded on facts. *See Guidroz-Brault*, 254 F.3d at 829-31; *Greenwell*, 184 F.3d at 497 ("Expert testimony, however, is inadmissible when the facts upon which the expert bases his testimony contradict the evidence.").

Greenberg's subjective conclusions and pronouncements should not be labeled as "expert opinions," either because she does not hold the expertise she professes to possess, her opinions are neither relevant nor reliable, her opinions are not based on accepted engineering principles, her opinions are biased, and/or her testimony would serve only to confuse and mislead a jury that her conclusory statements are supposedly expert opinions.

### III.        **CONCLUSION**

Permitting Greenberg to testify without her having applied a proper methodology in her work and without having considered all relevant evidence would cause severe prejudice to Plaintiff. It is also clear that Greenberg is ether not qualified or simply chose not to utilize a methodology used by other experts in the field.  Plaintiff therefore request that the Court strikes the Greenberg Report and accompanying testimony, not consider the same as evidence for any purpose, and grant Plaintiff such other and further relief, in law or in equity, to which Plaintiff may be entitled.

Respectfully Submitted,

DARYL K. WASHINGTON
State Bar No. 24013714

**WASHINGTON LAW FIRM, P.C.**
325 N. St. Paul St., Suite 3950
Dallas, Texas  75201
214-880-4883
469-718-0380 - fax
dwashington@dwashlawfirm.com

## CERTIFICATE OF CONFERENCE

The undersigned certifies that he attempted to confer on this motion with counsel for all defendants to determine whether they were opposed to the relief being sought in this motion but only heard back from Lee Thomas, counsel for Defendant J. Romero, by the time the courier picked up the motion for filing.   Lee Thomas has indicated he is opposed. Accordingly, Plaintiff presents this motion to the court as opposed.

_____
DARYL K. WASHINGTON

## CERTIFICATE OF SERVICE

I hereby certify that on July 5, 2016, the foregoing pleading was filed with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to accept this Notice as service of documents by electronic means.

_____
DARYL K. WASHINGTON

# EXHIBIT 1

# Tasha Zemrus Greenberg, M.D., PA

May 3, 2016

Kenneth E. East
FOSTER & EAST
Attorneys at Law
9001 Airport Freeway, Suite 675
North Richland Hills, Texas 76180

Dear Mr. East,

Per your request, in the matter of ERIC C. DARDEN, as Administrator of the Estate of Jermaine Darden v. The City of Fort Worth, Texas, et al., Civil Action No. 4:15-CV-221-A, in the United States District Court, Northern District of Texas, Fort Worth Division, I have agreed to serve as an expert in this matter.

I am currently employed as a Deputy Medical Examiner at the Tarrant County Medical Examiner's Office (TCME) in Fort Worth, Texas and have worked here since September of 2012.  My educational background includes receipt of a Bachelor's of Science degree in Kinesiology from the University of California at Los Angeles in 1989, receipt of a Medical Degree from Baylor College of Medicine in 1996 and completion of one year of Pathology residency at St. Joseph's Hospital and Medical Center in Phoenix, Arizona and four additional years at Baylor College of Medicine in Houston, Texas ending in 2001.  I then completed a fellowship in Forensic Pathology at the Office of the Medical Examiner for the County of Cook in Chicago, Illinois in 2002 and began working as an Assistant Medical Examiner for the Office of the Chief Medical Examiner for the State of Maryland in Baltimore, Maryland until 2008.  I then worked as the Medical Director for Autopsy Services at Parkland Hospital for the University of Texas Southwestern Medical Center in Dallas, Texas for three years where I supervised and taught residents in Pathology during their autopsy rotations.  I am board certified in Anatomic and Forensic Pathology, and currently hold a medical license in the State of Texas.  During my training and employment, I have performed approximately three thousand autopsies and observed or supervised many more.

In 2013, I was asked to review and complete the report on an autopsy that had been performed at the TCME's office on May 17, 2013.  The examination had been performed by Dr. Lloyd White prior to his retirement.  To this end, I reviewed all relevant and available materials, including notes, microscopic slides, investigative information, toxicology results, photographs, Taser device report and incident videos.  This information was then presented at the TCME Critical Case Review on 8/21/2013 and 8/28/2013, and a consensus opinion of those medical examiners present was obtained regarding cause and manner of death.  These items were re-reviewed at the present time along with provided medical records.

-2-

The circumstances of this incident are that the decedent, Jermaine N. Darden, identified by TCME case number 1306402, with a date of birth of 7/24/1978 was involved in a physical struggle with police while a search warrant was served, during which time a Taser was deployed and he was physically restrained. The beginning of the struggle could be heard on audio of a body cam tape (GOPRO018) at approximately 1:28 time of video. A faint possible statement of "can't breathe" is heard around this time, though it is not possible to ascertain who made this statement.

The Taser was deployed at approximately 1:47 video time with a second deployment at approximately 2:02 video time, and he was seen on his back at 2:09. Review of the Taser printout verified deployment of the Taser for 5 seconds each at 16:14:51 and 16:15:07. Mr. Darden continued to struggle and was rolled over on his side, then onto his stomach and was held down while being handcuffed. During this time, movement of his head was identified. Once he was handcuffed, officers stepped away from him and then rolled him over and assisted him to a seated position out of expressed concern for his ability to breathe. He was seated unassisted briefly, then an officer is noted to stabilize him from behind. It is uncertain at what exact point he became unresponsive.

Per EMS records, first vitals were taken at 4:47:23. At this time, there was no heart rate, no respirations and no blood pressure with a glascow coma scale of 3 and asystole by EKG. CPR was performed and he was transported to the hospital; epinephrine and narcan were noted to have been administered along with normal saline. He arrived at the emergency department at 1701. Bedside sonogram showed no cardiac activity. He was pronounced dead at 1709. Medical records did not note any past medical history on file, however there was one ER visit in June of 2012 following a motorcycle collision with no significant injuries noted. Family members report a history of asthma and hypertension, though this is not substantiated by medical records.

Autopsy findings included features of hypertensive atherosclerotic cardiovascular disease with focally severe coronary atherosclerosis including greater than 90% stenosis of the left anterior descending coronary artery and concentric left ventricular hypertrophy. The heart weighed 477 grams, which is slightly enlarged based on predicted normal weights for height. Mr. Darden was also obese with a body mass index of 52. Toxicology testing was positive for XLR-11, a synthetic cannabinoid, in the aortic blood, but was negative for ethanol and other drugs. Histologic examination of the organs showed features consistent with gross observations in the heart and lungs, with hypertrophic or enlarged cardiac myocytes, severe coronary atherosclerosis, pulmonary congestion and edema, as well as identifying hepatic steatosis or fatty change and chronic thyroiditis or inflammation in the thyroid gland. There were no features of an acute asthmatic episode identified in the lungs, which would be characterized by eosinophilic inflammation and mucus in airways.

The cause of death was ruled as sudden cardiac death associated with hypertensive atherosclerotic cardiovascular disease and application of restraint, with obesity, hepatic steatosis and chronic thyroiditis noted as contributory conditions. The manner of death was ruled as natural.

-3-

Sudden cardiac death (SCD) is a sudden, unexpected death caused by loss of heart function (sudden cardiac arrest). There are many risk factors that can increase a person's risk of sudden cardiac arrest and sudden cardiac death, including coronary artery disease, hypertension, previous myocardial infarction or heart attack, high cholesterol, family history of heart disease, smoking, obesity and recreational drug use. Activation of the sympathetic nervous system leads to accelerated heart rate, constriction of blood vessels and elevated blood pressure. Therefore, physiologic stress, such as exercise or other form of physical exertion, can trigger a life-threatening arrhythmia as well. In over half of cases, sudden cardiac arrest occurs without symptoms.

XLR-11, (1-(5-fluoropentyl)-1H-indol-3-yl) (2,2,3,3-tetramethylcyclopropyl) methanone, also known as 5-fluoro UR-144 or 5-FUR-144, is a synthetic cannabinoid, designed to mimic the agonistic effects attributed to tetrahydrocannabinol (THC) in the human system. It has been reported that the toxicity of synthetic cannabinoid, however, may be greater than THC due to higher potency, unregulated and varied dose preparation and purity on the vegetable matter and stronger activity on the cannabinoid receptors. There have been significant toxicological findings attributed to synthetic cannabinoid exposure that have not been seen with typical recreational marijuana usage, including acute nephrotoxicity, adverse psychoactive responses including severe anxiety, psychosis and hallucination, tachycardia or rapid heart rate, myocardial infarction, respiratory depression, seizures, suicidal ideations and death. The contribution of the XLR-11 synthetic cannabinoid to death in this case is uncertain.

In summary, this patient had multiple risk factors for sudden cardiac death, including severe coronary stenosis due to atherosclerosis, hypertrophy of the left side of the heart with cardiomegaly, obesity, fatty liver and thyroiditis, as well as use of a potentially cardiotoxic synthetic cannabinoid drug. The severity of his cardiac disease alone made him susceptible to sudden cardiac death at any time, with or without physical exertion. In this case, he became unresponsive associated with physical exertion during a struggle and physical restraint by the police.

Please contact me with any questions or concerns regarding this matter.

Sincerely,

Tasha Z. Greenberg, M.D.