ORIGINAL

In the United States District Court
Northern District of Texas
Fort Worth Division

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

AUG - 1 2016
3:18

CLERK, U.S. DISTRICT COURT
By_____
          Deputy

| | | |
|---|---|---|
| ERIC C. DARDEN | § | |
| | § | |
| v. | § | Civil Action No. 4:15-CV-221-A |
| | § | |
| THE CITY OF FORT WORTH, | § | JURY TRIAL DEMANDED |
| TEXAS, *et al.* | § | |

---

## PLAINTIFF'S BRIEF IN SUPPORT OF HIS RESPONSE TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

---

Daryl K. Washington
Texas Bar No. 24013714
325 North St. Paul Street, Suite 3950
Dallas, Texas 75201
(214) 880-4883 (phone)
(214) 751-6685 (facsimile)
dwashington@dwashlawfirm.com

Matthew J. Kita
Texas Bar No. 24050883
P.O. Box 5119
Dallas, Texas 75208
(214) 699-1863 (phone)
(214) 347-7221 (fax)
matt@mattkita.com

ATTORNEYS FOR PLAINTIFF

# Table of Contents

Table of Authorities..................................................................................... ii

Table of Video and Photographic Evidence..................................... v

Standard of Review .................................................................................. 1

A.    Summary Judgment............................................................................ 1

B.    Qualified Immunity........................................................................... 2

Arguments & Authorities ..................................................................... 3

A.    Defendant Snow and Romero are not entitled to summary judgment. 3

    1.    Genuine issues of material fact remain in dispute on whether Snow and Romero used force that was clearly excessive and unreasonable. ....................................................................... 3

    2.    Snow and Romero are not entitled to qualified immunity because it is "clearly established" that the use of a taser and kicking a suspect is excessive force......................................... 10

    3.    Plaintiff's state-law claims against Romero have already been dismissed............................................................................... 11

B.    The City of Fort Worth is not entitled to summary judgment on Plaintiff's failure-to-train claim. ....................................................... 11

    1.    There is a genuine issue of material fact in dispute as to whether the City's provided its "Zero Tolerance" officers with adequate training................................................................... 12

    2.    A reasonable juror could rationally infer that the City was deliberately indifferent to its inadequate training program from the facts of this case................................................................ 15

    3.    The parties' respective experts disagree on whether the lack of training directly caused Plaintiff's injuries. ............................. 18

Conclusion and Prayer........................................................................ 19

# Table of Authorities

## Cases

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ................................................................................................ 1

*Anderson v. McCaleb,*
    480 F. App'x 768 (5th Cir. 2012) ............................................................................ 9

*Autin v. City of Baytown,*
    174 F. App'x 183 (5th Cir. 2005) ............................................................................ 9

*Bates v. Parker,*
    No. 3:00-CV-1918-P, 2002 WL 1117671 (N.D. Tex. May 28, 2002) ..... 10

*Brown v. Faison,*
    No. 6:04-CV-016-C, 2005 WL 473681 (N.D. Tex. Mar. 1, 2005) .......... 10

*Brown v. Glossip,*
    878 F.2d 871 (5th Cir. 1989) ................................................................................... 4

*Bush v. Strain,*
    513 F.3d 492 (5th Cir. 2008) ................................................................................. 11

*Carroll v. Ellington,*
    800 F.3d 154 (5th Cir. 2015) ................................................................................... 9

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) ................................................................................................ 1

*Clark v. Massengill,*
    No. 14-60412, 2016 WL 909417 (5th Cir. Mar. 9, 2016) ................... 9, 11

*Curtis v. Mosher,*
    No. 3:12-CV-4866-B, 2014 WL 2452571 (N.D. Tex. June 2, 2014) ....... 10

*Deville v. Marcantel,*
    567 F.3d 156 (5th Cir. 2009) ................................................................................... 3

*Estate of Davis, ex rel. McCully v. City of N. Richland Hills,*
    406 F.3d 375 (5th Cir. 2005) ................................................................................. 16

*Garner v. Santoro,*
   865 F.2d 629 (5th Cir. 1989) ................................................................. 19

*Geils v. Patin,*
   941 F. Supp. 2d 722 (N.D. Tex. 2012) ...................................................... 2

*Goldman v. Williams,*
   101 F. Supp. 3d 620 (S.D. Tex. 2015) ....................................................... 4

*Graham v. Connor,*
   490 U.S. 386 (1989); ........................................................................... 4

*Hudson v. McMillan,*
   503 U.S. 1 (1992) ............................................................................... 4

*Ikerd v. Blair,*
   101 F.3d 430 (5th Cir. 1996); ................................................................. 4

*Isquith v. Middle South Utilities, Inc.,*
   847 F.2d 186 (5th Cir. 1988) .................................................................. 2

*Johnson v. Nwankwo,*
   No. 3:02-CV-1736-BF, 2003 WL 21751706 (N.D. Tex. July 23, 2003) . 10

*Lavespere v. Niagara Mach. & Tool Works, Inc.,*
   910 F.2d 167 (5th Cir. 1990) .................................................................. 2

*Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.,*
   831 F.2d 77 (5th Cir.1988) .................................................................... 1

*Malley v. Briggs,*
   475 U.S. 335 (1986) ............................................................................ 2

*Milam v. City of San Antonio,*
   113 F. App'x 622 (5th Cir. 2004) ........................................................... 18

*Morgan v. Barnett,*
   No. 7:09-CV-167-O, 2012 WL 1033507 (N.D. Tex. Mar. 22, 2012) ...... 10

*Pearson v. Callahan,*
   555 U.S. 223 (2009) ............................................................................ 2

*Poole v. City of Shreveport,*
    691 F.3d 624 (5th Cir. 2012) ........................................................................ 8

*Saucier v. Katz,*
    533 U.S. 194 (2001) ..................................................................................... 2

*Tarver v. City of Edna;*
    410 F.3d 745 (5th Cir. 2005) .................................................................... 3, 9

*Tennessee v. Garner,*
    471 U.S. 1 (1985) ......................................................................................... 4

*Tolan v. Cotton,*
    134 S. Ct. 1861 (2014) ............................................................................. 1, 9

*Zarnow v. City of Wichita Falls,*
    614 F.3d 161 (5th Cir. 2010) ...................................................................... 12

**Rules**

Fed. R. Civ. P. 56 ........................................................................................... 1

## Table of Video and Photographic Evidence

Exhibit 2 to the Appendix in Support of Plaintiff's Response to Defendants' Motions for Summary Judgment is a CD containing numerous videos and photographs. For the Court's convenience, Plaintiff provides the following guide to the information contained on this CD:

**Filename - Description**

**Videos**

GoPro007 -  Original video from officer

GoPro007 -  Original video from officer (slow motion)

GoPro008 -  Original video from officer

GoPro008 -  Original video from officer (slow motion)

Video 1 -   comment from Officer Chavez - "I'm surprised there are no fried chicken restaurants"

Video 2 -   comment from Officer Chavez - "I'm about to Fuck somebody up"

Video 3 -   Darden raising hands

Video 4 -   Officer steps on the head of individual in home

Video 5 -   Snow tased Darden although he is not resisting

Video 6 -   Officer kicks Darden in the head

Video 7 -   Snow tased Darden a second time although he is not resisting

Video 8 -   Officer steps on Darden's arm

Video 9 -   Officer choking Darden

Video 10 -  Officers pinning Darden's head to the ground

Video 11 -  Darden in a seated position with the assistance of officers (no movement)

Video 12 -  Darden in a seated position with the assistance of officers (no movement)

Video 13 -   Darden in a seated position with the assistance of officers (no movement)

Video 14 -   Darden in a seated position with the assistance of officers (no movement)

Video 15 -   Defendant Snow rips of Darden's shirt although he is not resisting

Video 16 -   Second tase of Darden although he is not resisting

Video 17 -   Darden on his stomach.  Officers advised he can't breathe

Video 18 -   Officers places pressure on Darden's head

Video 19 -   Officer attempts to roll a motionless Darden over

Video 20 -   Officers place Darden in a seated position

Video 21 -   Darden slumped over to his right

Video 22 -   Darden slumped over to his right

**Photos**

Photo 1 -    Officers laughing at Officer Chavez's racially insensitive joke

Photo 2 -    Darden has both hands up

Photo 3 -    Darden tased (Witness Donald Virden has a clear view of incident)

Photo 4 -    Darden on ground, motionless

Photo 5 -    Officer steps on Darden's arm

Photo 6 -    Officer choking Darden

Photo 7 -    Officer's arm around Darden's neck

Photo 8 -    Officer knees in Darden's back to hold him up

Photo 9 -    Darden slumped over to the right

Photo 10 -   Darden slumped over with blood on his stomach

Photo 11 -   Officers holding Darden up in a seated position (witness Donald Virden has a clear view)

Photo 12 -   Officer rips off Darden's shirt although he is compliant

Photo 13 -   Officer tases Darden

Photo 14 -   Darden on ground after being tased

Photo 15 -   Darden on ground, officer's foot on Darden's arm

Photo 16 -   Darden on stomach, face down with officer on top

Photo 17 -   Darden on stomach with cuffs on

Photo 18 -   Darden on stomach with cuffs on

Photo 19 -   Darden on stomach with cuffs on

Photo 20 -   Darden slumped over to the right

# Standard of Review

**A.    Summary Judgment**

As the summary-judgment movants, William F. Snow and Javier Romero bear the burden of demonstrating an absence of evidence to support the non-movant's case.[1] In other words, if this Court concludes that a genine issue of fact exists with regard to Plaintiff's causes of action that are the subject of Snow and Romero's motions, they are not entitled to summary judgment on those claims.[2] A genuine issue of fact exists where the evidence is such that a reasonable jury could return a verdict for the non-moving party.[3] When determining whether such a dispute exists, this Court must accept the evidence offered by Plaintiff as true, and must draw all justifiable inferences in their favor.[4] With regard to the evidence that is favorable to Plaintiff, this Court should be lenient in allowing evidence that is admissible, although it may not be in admissible form.[5] Finally, Plaintiff

---

[1] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[2] Fed. R. Civ. P. 56.

[3] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

[4] *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014) (per curiam).

[5] *See Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.*, 831 F.2d 77, 80 (5th Cir.1988).

may also identify evidentiary documents already in the record that establish specific facts showing the existence of a genuine issue.[6]

## B.   Qualified Immunity

This Court must undertake a two-pronged inquiry to evaluate Snow and Romero's claim of qualified immunity.[7] The first question is, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"[8] The second prong inquires "whether the right was clearly established" at the time of the alleged misconduct.[9] The test to determine if the right was clearly established is "whether it would be clear to a reasonable officer that the conduct was unlawful in the situation he confronted."[10] If a reasonable jury could conclude that an officer is "plainly incompetent" or "knowingly violates the law," he is not entitled to qualified immunity.[11]

---

[6] *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990); *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 198–200 (5th Cir. 1988).

[7] *See Geils v. Patin*, 941 F. Supp. 2d 722, 727 n.5 (N.D. Tex. 2012) (Boyle, J.) (citing *Pearson v. Callahan,* 555 U.S. 223, 236 (2009)).

[8] *Saucier v. Katz,* 533 U.S. 194, 201 (2001), *overruled in part by Pearson,* 555 U.S. at 231.

[9] *Saucier*, 533 U.S. at 201.

[10] *Saucier*, 533 U.S. at 202.

[11] *Saucier*, 533 U.S. at 202 (citing *Malley v. Briggs,* 475 U.S. 335, 341 (1986)).

## Arguments & Authorities

**A.      Defendant Snow and Romero are not entitled to summary judgment.**

**1.      Genuine issues of material fact remain in dispute on whether Snow and Romero used force that was clearly excessive and unreasonable.**

This Court should deny Defendant Snow and Romero's motions for summary judgment because they have not conclusively established the absence of a fact dispute on Plaintiff's excessive-force claim. As they correctly noted in their briefs, this cause of action has three elements, namely, (1) an injury, (2) which resulted directly and only from a use of force that was *clearly excessive,* and (3) the excessiveness of which was clearly *unreasonable.*[12] Here, there is no dispute that Jermaine Darden suffered an injury. Accordingly, Snow and Romero are not entitled to summary judgment if no reasonable juror could conclude that their actions were excessive and unreasonable.

At the outset of this discussion, it is important to note the factors that courts must consider when determining the reasonableness of an officer's actions. Romero's brief in support erroneously relies on five factors

---

[12] Docket No. 71, PageID 705 (citing Knight v. Caldwell, 970 F.3d 1430, 1432-33 (5th Cir. 1992)); Docket No. 76, PageID 859 (both citing *Deville v. Marcantel,* 567 F.3d 156, 167 (5th Cir. 2009) (emphasis added); *Tarver v. City of Edna*; 410 F.3d 745, 751 (5th Cir. 2005)).

discussed by the Supreme Court in its 1992 decision in *Hudson v. McMillan*.[13] But the analysis in *Hudson* only applies to alleged violations of the *Eighth* amendment, which requires a plaintiff to prove that the use of force against a convicted and incarcerated individual was "wanton and unnecessary."[14] Here, it is undisputed that Plaintiff's claims arises under the *Fourth* amendment. As Judge Sim Lake noted last year in his opinion in *Goldman v. Williams*, that standard is far less onerous:

> Reasonableness swings in the balance of the degree of intrusion on the individual's constitutional rights, as measured by the amount of force used, and the importance to the government of apprehending the individual. Factors such as the following are pertinent to the inquiry: 1) whether the suspect was armed; 2) whether the suspect posed an immediate threat to the safety of the officers or the public; 3) whether the suspect resisted arrest; 4) whether a warrant was employed and the severity of the crime for which the suspect was to be arrested; 5) whether more than one suspect or police officer was involved; and 6) whether other dangerous or exigent circumstances existed at the time of arrest.[15]

---

[13] *Hudson v. McMillan*, 503 U.S. 1, 7 (1992).

[14] *Hudson*, 503 U.S. at 7.

[15] *Goldman v. Williams*, 101 F. Supp. 3d 620, 648 (S.D. Tex. 2015) (citing *Graham v. Connor*, 490 U.S. 386, 393–94 (1989); *Tennessee v. Garner*, 471 U.S. 1, 11 (1985); *Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir. 1996); *Brown v. Glossip*, 878 F.2d 871, 874 (5th Cir. 1989)).

Given these factors, Plaintiff respectfully disagrees with Snow's characterization of the force used on Jermaine Darden as "measured, minimal, and imminently reasonable."[16]

The video evidence and sworn testimony from numerous eyewitnesses directly contradict Snow's and Romero's account of how the incident unfolded. The video clearly shows that the officers startled Jermaine when they entered the residence.[17] As the entry team came into the house, Jermaine has both hands in the air.[18] Regardless, immediately after entering, Snow grabbed Jermaine and tore his shirt while throwing him to the ground. Romero choked Darden, punched him, and kicked him in the mouth multiple times.[19] Jermaine—along with several of his family members—told the officers that he had asthma and could not breathe.[20] Regardless, Snow shot Darden with his taser two times in sixteen seconds.[21] Both times when he was shot, Jermaine raised up on his hands and knees to gasp for air.[22] After the second taser shot, Darden remained motionless and died at the scene

---

[16] Docket No. 76, PageID 863.

[17] *See generally* Appendix, Ex. 2 (CD containing video and photographs).

[18] Appendix, p. 15.

[19] Appendix, p. 15.

[20] Appendix, p. 16.

[21] Appendix, pp. 4–5.

[22] Appendix, p. 15.

before MedStar personnel arrived.[23] Contrary to the conclusions proffered by the Defendants' expert, forensic pathologist Dr. Jonathan Briskin opined that the officers' actions triggered a cardiac arrhythmia that sent Jermaine into sudden cardiac arrest.[24] Although Dr. Briskin noted that it was possible that Jermaine could have been resuscitated, none of the officers checked Darden's pulse to confirm if he was breathing, nor did any of the officers attempted to administer CPR.[25]

With regard to the five factors that Judge Lake discussed in *Goldman*, the evidence in the record plainly weighs in Plaintiff's favor. Here, it is undisputed that Jermaine was unarmed. There is no evidence to suggest that he posed an immediate threat to the safety of the officers or the public. At the very least, there is a factual dispute as to whether he was resisting arrest; the officers believed that he was, but the video and other eyewitnesses state that he was simply trying to breathe. Although the officers obtained a warrant to search Jermaine's home, the crime at issue was non-violent in nature, and the only previous reports of criminal activity were three twenty-dollar drug transactions. This incident involved only one suspect, but

---

[23] Appendix, p. 16.

[24] Appendix, p. 40.

[25] Appendix, p. 41.

numerous police officers. And finally, no other dangerous or exigent circumstances existed at the time of arrest; in the 45-second period between the time the officers entered Jermaine's home and the time Snow fired his first taser shot, it should have been obvious to any reasonable police officer that Jermaine did not have a weapon.

The parties' respective experts demonstrate why Snow and Romero are not entitled to summary judgment on this issue. Although Defendants' expert believes that "the actions of all officers...were reasonable, necessary to counter the continuing and active resistance of Darden, and consistent with Fort Worth police training and with customary police practices,"[26] Craig Miller, the current Chief of Police for the Dallas Independent School District, opines that *no* reasonable police officer would:

— allow six officers to place their body weight on Jermaine after multiple people told them that he suffered from asthma and had trouble breathing;

— kick Jermaine in the mouth with his boot as he struggled to breathe; and

— tase Jermaine two times in 16 seconds as he struggled to raise his body to breathe.[27]

---

[26] Docket No. 76, PageID 854.

[27] Appendix, pp. 34–35.

In sum, this case presents a clear case in which there is a "battle of the experts" on an issue that is central to the parties' claims and defenses. Summary judgment, therefore, is not appropriate.

Moreover, the case law on which Defendants rely is also unpersuasive. The only case that Snow cites to support in his argument that the use of a taser is "objectively reasonable" under such circumstances is the Fifth Circuit's 2012 opinion in *Poole v. City of Shreveport*.[28] There, however, it was *undisputed* that the suspect's resistance was "immediate and persistent" and that his version of the encounter was "plainly contradicted by the videotape."[29] Here, by contrast, the two videos on which Snow relies do *not* show the entire encounter between him and Jermaine. Instead, one camera begins by focusing on activities in the kitchen, while the other focuses on the search in a bedroom. Accordingly, the testimony of the eyewitnesses is essential and there is clearly a factual dispute as to what happened: Although Snow claims that he "struggled with Darden for over half a minute trying to get him on the ground,"[30] his self-serving recollection is contradicted by other persons present when the incident occurred, who

---

[28] *Poole v. City of Shreveport*, 691 F.3d 624 (5th Cir. 2012).

[29] *Poole*, 691 F.3d at 629, 632.

[30] Docket No. 76, PageID 846.

stated under oath that Jermaine was *not* resisting arrest, never made any threatening gestures, and never attempted to push an officer off of him.[31] Because the standard of review requires this Court accepts the evidence offered by Plaintiff as true, and must draw all justifiable inferences in his favor,[32] it cannot discount Plaintiff's version of the events and accept Snow's and Romero's versions instead.[33] And because the Fifth Circuit has consistently held that "repeated applications of a Taser after a suspect is arrested, subdued, and no longer resisting arrest may be clearly excessive and objectively unreasonable," Snow is not entitled to summary judgment on this basis.[34]

Finally—and perhaps not surprisingly—Romero does not direct this Court to *any* case law to support his argument that punching and kicking a suspect in the face is "reasonable as a matter of law." In fact, many courts in this District have concluded exactly the opposite, and have denied motions

---

[31] Appendix, pp. 95–97, 108, 115, 133–39, 161, 168, 172.

[32] *Tolan v. Cotton*, 134 S. Ct. at 1863.

[33] *See Clark v. Massengill*, No. 14-60412, 2016 WL 909417, at *1 (5th Cir. Mar. 9, 2016) (citing *Tarver*, 410 F.3d at 753).

[34] *Clark*, 2016 WL 909417, at *2 (citing *Carroll v. Ellington*, 800 F.3d 154, 177 (5th Cir. 2015); *Anderson v. McCaleb*, 480 F. App'x 768, 773 (5th Cir. 2012); *Autin v. City of Baytown*, 174 F. App'x 183, 185 (5th Cir. 2005)).

for summary judgment when officers have engaged in such conduct.[35] Plaintiff respectfully submits that the same result should follow here, and conclude that Romero has not met his summary-judgment burden.

**2.      Snow and Romero are not entitled to qualified immunity because it is "clearly established" that the use of a taser and kicking a suspect is excessive force.**

Having demonstrated that genuine issues of material fact exist with regard to whether Jermaine was resisting arrest when Snow tased him and when Romero kicked him in the face, this Court should conclude that Snow and Romero are not entitled to summary judgment on their qualified-immunity defense it is clearly established that such acts constitute excessive force. In each of the cases cited in footnotes 34 and 35 above, the courts denied the officers' motions for summary judgment on qualified immunity because "once a suspect has been handcuffed and subdued, and is no longer resisting, an officer's subsequent use of force is excessive." The Fifth Circuit has also held that it is clearly established that the amount of force that an officer can use "depends on the severity of the crime at issue, whether the

---

[35] *See, e.g., Curtis v. Mosher*, No. 3:12-CV-4866-B, 2014 WL 2452571, at *10 & n.6 (N.D. Tex. June 2, 2014); *Morgan v. Barnett*, No. 7:09-CV-167-O, 2012 WL 1033507, at *9 (N.D. Tex. Mar. 22, 2012), *report and recommendation adopted,* No. 7:09-CV-167-O, 2012 WL 1193741 (N.D. Tex. Apr. 10, 2012); *Brown v. Faison*, No. 6:04-CV-016-C, 2005 WL 473681, at *7 (N.D. Tex. Mar. 1, 2005); *Johnson v. Nwankwo*, No. 3:02-CV-1736-BF, 2003 WL 21751706, at *1 (N.D. Tex. July 23, 2003); *Bates v. Parker*, No. 3:00-CV-1918-P, 2002 WL 1117671, at *1 (N.D. Tex. May 28, 2002).

suspect posed a threat to the officer's safety, and whether the suspect was resisting arrest or attempting to flee."[36] Although it is undisputed that Jermaine was not handcuffed until after Snow tased him, there is a dispute as to whether he was resisting arrest at all and consequently, whether a reasonable officer could conclude that he posed any threat to their safety. And once again, because this Court is required to credit Plaintiff's allegations at this stage of the proceeding, it should also conclude that neither Snow nor Romero have demonstrated that they are entitled to qualified immunity as a matter of law.

### 3. Plaintiff's state-law claims against Romero have already been dismissed.

Romero's brief argument on this topic is moot. This Court has already dismissed Plaintiff's state-law claims against him.[37]

### B. The City of Fort Worth is not entitled to summary judgment on Plaintiff's failure-to-train claim.

This Court should deny the City's motion for summary judgment on Plaintiff's *Monell* claim for failing to train its officers. This cause of action has three elements, and to prevail at trial, Plaintiff must demonstrate that (1) the City's training procedures were inadequate; (2) the City was deliberately

---

[36] *Clark*, 2016 WL 909417, at *2 (citing *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008)).

[37] Docket No. 50.

indifferent in adopting its training policy; and (3) the inadequate training policy directly caused the violations in question.[38] Because genuine issues of material fact remain in dispute on all three elements, this Court should deny the City's motion for summary judgment.

1.   **There is a genuine issue of material fact in dispute as to whether the City's provided its "Zero Tolerance" officers with adequate training.**

The City has not conclusively established that it provided its "Zero Tolerance" officers with adequate training as a matter of law. As Chief Miller noted in his expert report, the depositions of several officers in this Unit admitted that they were not trained on what amount of force is appropriate, were not properly advised about what to expect when they entered Jermaine's house, and were not trained about how to properly care for suspects who complain that they cannot breathe.

For example, Snow stated in his deposition that the training and experience he received allowed him to believe that it is reasonable for police officers to kick an individual in the mouth.[39] When asked if he was familiar with Fort Worth Police Department General Order 314, which requires

---

[38] *See, e.g., Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010)).

[39] Appendix, pp. 21–22.

officers to use extreme caution with such suspects, Snow admitted that he did not receive any training about how to handle an obese suspect.[40]

Similarly, Romero admitted that "no training was required to be a member of the Zero Tolerance Unit,"[41] but that the training he *did* receive taught him that it was acceptable to punch suspects in the face.[42] Romero further testified that with regard to General Order 314, he "probably" received training on this topic "in the academy" but "did not remember."[43] And although Romero claims that he received CPR training, Romero did not perform CPR on Jermaine because he was not sure how to find a pulse, and was not concerned that Jermaine was dying.[44] Notably, no other officer performed CPR on Jermaine either.[45]

Other officers at the scene also corroborated the City's lack of training in these areas. Officer Brad Danford affirmed that the City does not provide any training regarding how to check whether people who complain of not being able to breathe are actually breathing.[46] When asked, "What type of

---

[40] Appendix, pp. 24–25.

[41] Appendix, pp. 22–23.

[42] Appendix, pp. 178–81.

[43] Appendix, p. 185.

[44] Appendix, pp. 182–84.

[45] Appendix, p. 41.

[46] Appendix, p. 77.

training do you receive to deal with individuals in a distress situation?" Officer Christopher Gray responded under oath, "Not very much."[47] Gray also confirmed that he did not receive training on how to handle an obese person.[48] And perhaps most egregiously, one of the officers can be heard stating, "I'm about to fuck somebody up" as the unit is en route at Jermaine's house.[49]

Finally, Officer Jason Ricks explained that before the "Zero Tolerance" unit makes a dynamic entry, the officers are supposed to receive a "briefing sheet" that "makes sure that all of the pertinent information is communicated to everybody that's involved."[50] In this case, however, the officers were never even given a physical description of the suspect. Moreover, Snow, Romero, and Ricks testified that they were not provided with any information regarding physical descriptions of *any* of the expected occupants of the house or whether weapons could be expected to be inside.[51]

In sum, according to Chief Miller, his review of the evidence revealed "a lack of adequate training to be a significant part of the reason that the

---

[47] Appendix, p. 46.

[48] Appendix, pp. 46–47.

[49] Appendix, p. 4; Video2 on CD.

[50] Appendix, pp. 61–63.

[51] Appendix, pp. 25–28, 61–63. A copy of the "briefing sheet" at issue is located on page 80 of the Appendix.

Zero Tolerance Unit utilized used more force than the situation required.[52] Given his unassailable credentials to offer such an opinion, Plaintiff respectfully submits that the evidence in the record, along with Chief Miller's expert report, could persuade a reasonable juror that the City's training procedures were inadequate. Accordingly, the City is not entitled to summary judgment on this basis.

2.     **A reasonable juror could rationally infer that the City was deliberately indifferent to its inadequate training program from the facts of this case.**

At the outset, it is important to note that Snow and Romero both *admit* that they received training from the City that informed them that it is acceptable to punch and kick suspects in the face. As noted above, numerous courts have held that such conduct is excessive and unreasonable, and that officers who engage in such tactics are not entitled to qualified immunity for their actions. If this Court accepts the truth of their testimony and resolves all reasonable inferences in Plaintiff's favor—as it must under the standard of review—a reasonable juror could conclude that the City is deliberately indifferent to the clearly established rights of its citizenry.

But even if this Court were not persuaded by this direct evidence of deliberate indifference, if Plaintiff can demonstrate that Jermaine's death

---

[52] Appendix, p. 32.

- 15 -

was a "highly predictable consequence" of the City's failure to train its officers, and that this failure was "moving force behind the constitutional violation,"[53] the City's motion for summary judgment must be denied. Here, Officers Snow, Romero, and Ricks all affirmed that they were not provided with even the most basic information regarding the home on which they were being instructed to effectuate a dynamic entry.[54] They further admitted that if they had known that the home was occupied by—for example—a pregnant woman and small children, they would have engaged in different tactics.[55] Snow, Romero, Romero, and Gray further testified that they were not trained on how to handle obese suspects or to verify complaints of an inability to breathe.[56] In other words, if the City had provided the "Zero Tolerance" unit with the required information, they would not have conducted the dynamic entry, or alternatively, that they would have taken proper care of Jermaine once they realized that he could not breathe. Under either alternative, Jermaine would still be alive today. Plaintiff respectfully submits that the failure to provide this information amounts to a failure to

---

[53] Docket No. 74, PageID 821 (citing *Estate of Davis, ex rel. McCully v. City of N. Richland Hills,* 406 F.3d 375, 385–86 (5th Cir. 2005)).

[54] Appendix, pp. 25–28, 61–63.

[55] Appendix, pp. 25–28, 61–63.

[56] Appendix, pp. 24–25, 77, 185

train, that death or serious injury is a highly predictable consequence of a dynamic entry without proper information, and that in this case, this failure was a moving force behind the constitutional violations that Jermaine experienced.

According to the City, "In the present case, officers were trained and the video of the incident demonstrates that officers only used the amount of force necessary to restrain Darden, and that as soon as officers restrained Darden, he was sat up with an officer monitoring him."[57] But this argument presumes that this Court will conclude that Jermaine was resisting arrest and that the officers monitoring Jermaine did so in accordance with adequate training. In fact, the evidence shows that the officers did just the opposite. They were pretending that Jermaine was alive by propping him up knowing that he was gasping for his final breath of life. Because the record reflects factual disputes with regard to both of these presumptions, this argument fails.

Finally, it is important to note that neither Snow nor Romero nor any of the officers were disciplined for their conduct that ultimately led to Jermaine's death. In 2004, the Fifth Circuit held in *Milam v. City of San Antonio* that "[T]the failure to take disciplinary action in response to an

---

[57] Docket No. 74, PageID 823–25.

illegal arrest, when combined with other evidence, could tend to support an inference that there was a preexisting de facto policy of making illegal arrests: the policymaker did not discipline the employee because, in the policymakers' eyes, the employee's illegal conduct actually conformed with municipal policy." [58] The same result should follow here. If the jury concludes that Jermaine was subdued, cooperative, and not resisting arrest at the time that Snow tased him and Romero punched and kicked him in the face, the same jury could also conclude that the City was deliberately indifferent to this conduct.

### 3. The parties' respective experts disagree on whether the lack of training directly caused Plaintiff's injuries.

The City's brief in support of its motion for summary judgment only addresses the first and second elements of Plaintiff's failure-to-train claim. Although this Court cannot cannot grant summary judgment sua sponte on grounds not requested by the movant, out of an abundance of caution, Plaintiff will address this element as well. Here, as noted above, Dr. Jonathan Briskin opined that the officers' actions triggered a cardiac arrhythmia that sent Jermaine into sudden cardiac arrest,[59] and Chief

---

[58] *Milam v. City of San Antonio*, 113 F. App'x 622, 628 (5th Cir. 2004).

[59] Appendix, p. 40.

Martin's report plainly concludes that numerous inadequacies regarding the training that the City provides to its police officers directly caused the violations in question.[60] Accordingly, to the extent that the City intends to argue that Jermaine died of natural causes,[61] or that it provided its officers with adequate training,[62] there is clearly a disagreement between the parties' experts, which gives rise to a factual dispute for the jury to resolve.[63] This Court, therefore, should deny the City's motion for summary judgment.

### Conclusion and Prayer

This Court should deny Defendant Snow and Romero's motions for summary judgment because they have not conclusively established the absence of a fact dispute on Plaintiff's excessive-force claim. Moreover, Snow and Romero are not entitled to qualified immunity because their conduct was objectively unreasonable, and because Jermaine's right to be free from force when he was not resisting arrest was clearly established at the time of the incident. Finally, the City is not entitled to summary judgment on Plaintiff's *Monell* claim for failing to train because genuine

---

[60] Appendix, pp. 19–35.

[61] Docket No. 74, PageID 814.

[62] Docket No. 74, PageID 822

[63] *See Garner v. Santoro,* 865 F.2d 629, 644 (5th Cir. 1989) (stating that in a "battle of the experts" a jury "must be allowed to make credibility determinations and weigh the conflicting evidence in order to decide the likely truth of a matter").

issues of material fact remain in dispute as to whether the City's training procedures were inadequate and whether the City was deliberately indifferent in adopting its training policy. For these reasons, Plaintiff respectfully requests this Court to deny all three motions for summary judgment and to allow this case to proceed to a trial by jury.

Respectfully submitted,

Daryl K. Washington
Texas Bar No. 24013714
325 North St. Paul Street, Suite 1975
Dallas, Texas 75201
(214) 880-4883 (phone)
(214) 751-6685 (facsimile)
dwashington@dwashlawfirm.com

Matthew J. Kita
Texas Bar No. 24050883
P.O. Box 5119
Dallas, Texas 75208
(214) 699-1863 (phone)
(214) 347-7221 (fax)
matt@mattkita.com

ATTORNEYS FOR PLAINTIFF

- 20 -

## CERTIFICATE OF SERVICE

On August 1, 2016, I served a copy of this document on all counsel of record via e-mail in accordance with Federal Rule of Civil Procedure 5(b)(2)(E).

Daryl K. Washington