IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



ERIC C. DARDEN, AS              §
ADMINISTRATOR OF THE ESTATE OF  §
JERMAINE DARDEN,                §
                                §
        Plaintiff,              §
                                §
VS.                             §   NO. 4:15-CV-221-A
                                §
THE CITY OF FORT WORTH, TEXAS,  §
ET AL.,                         §
                                §
        Defendants.             §

### MEMORANDUM OPINION AND ORDER

Came on for consideration the motions of defendants, City of
Fort Worth ("City"), W.F. Snow ("Snow"), and J. Romero
("Romero"), for summary judgment. The court, having considered
the motions, the response of plaintiff, Eric C. Darden, as
Administrator of the Estate of Jermaine Darden, the record, the
summary judgment evidence, and applicable authorities, finds that
the motions should be granted.

                              I.

### Plaintiff's Claims

The operative pleading is plaintiff's third amended
complaint filed May 11, 2016. Doc.[1] 66. Plaintiff's claims arise
out of the execution of a no knock search warrant on May 16,
2013, carried out by City's police officers, including Snow and

_____

[1]The "Doc." reference is to the number of the item on the docket in this action.

Romero. At some time during the execution of the warrant,

Jermaine Darden ("Darden") died. Plaintiff asserts claims against

Snow and Romero based on the alleged use by them of excessive

force. Plaintiff asserts a claim against City based on failure to

train its police officers and a negligence claim based on the

contention that Snow's use of a taser caused Darden's death.

II.

## Grounds of the Motions

Defendants Snow and Romero maintain that they are each

entitled to qualified immunity. Further, they did not use

excessive force when restraining Darden. Defendant City urges

that plaintiff cannot demonstrate that City had a policy,

practice or custom that caused Darden a deprivation of federal

constitutional rights; the City's training policy is adequate;

the City's police officers are adequately supervised; and, City

is entitled to sovereign immunity as to plaintiff's state law

claims.

III.

## Applicable Legal Principles

A.   Summary Judgment

Rule 56(a) of the Federal Rules of Civil Procedure provides

that the court shall grant summary judgment on a claim or defense

if there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law.  Fed. R. Civ.
P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247
(1986).  The movant bears the initial burden of pointing out to
the court that there is no genuine dispute as to any material
fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986).
The movant can discharge this burden by pointing out the absence
of evidence supporting one or more essential elements of the
nonmoving party's claim, "since a complete failure of proof
concerning an essential element of the nonmoving party's case
necessarily renders all other facts immaterial." Id. at 323.
Once the movant has carried its burden under Rule 56(a), the
nonmoving party must identify evidence in the record that creates
a genuine dispute as to each of the challenged elements of its
case.  Id. at 324; see also Fed. R. Civ. P. 56(c) ("A party
asserting that a fact . . . is genuinely disputed must support
the assertion by . . . citing to particular parts of materials in
the record . . . .").  If the evidence identified could not lead
a rational trier of fact to find in favor of the nonmoving party
as to each essential element of the nonmoving party's case, there
is no genuine dispute for trial and summary judgment is
appropriate.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
475 U.S. 574, 587, 597 (1986).  In Mississippi Prot. & Advocacy
Sys., Inc. v. Cotten, the Fifth Circuit explained:

3

> Where the record, including affidavits,
> interrogatories, admissions, and depositions could not,
> as a whole, lead a rational trier of fact to find for
> the nonmoving party, there is no issue for trial.

929 F.2d 1054, 1058 (5th Cir. 1991).

The standard for granting a motion for summary judgment is the same as the standard for rendering judgment as a matter of law.[2] Celotex Corp., 477 U.S. at 323.  If the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. Matsushita, 475 U.S. at 597; see also Mississippi Prot. & Advocacy Sys., 929 F.2d at 1058.

B.   Qualified Immunity

Qualified immunity insulates a government official from civil damages liability when the official's actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  For a right to be "clearly established," the right's contours must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).  Individual liability thus turns on the objective legal

_____

[2]In Boeing Co. v. Shipman, 411 F.2d 365, 374-75 (5th Cir. 1969) (en banc), the Fifth Circuit explained the standard to be applied in determining whether the court should enter judgment on motions for directed verdict or for judgment notwithstanding the verdict.

reasonableness of the defendant's actions assessed in light of clearly established law at the time. Hunter v. Bryant, 502 U.S. 224, 228 (1991); Anderson, 483 U.S. at 639-40. In Harlow, the court explained that a key question is "whether that law was clearly established at the time an action occurred" because "[i]f the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." 457 U.S. at 818. In assessing whether the law was clearly established at the time, the court is to consider all relevant legal authority, whether cited by the parties or not. Elder v. Holloway, 510 U.S. 510, 512 (1994). If public officials of reasonable competence could differ on the lawfulness of defendant's actions, the defendant is entitled to qualified immunity. Mullenix v. Luna, 136 S. Ct. 305, 308 (2015); Malley v. Briggs, 475 U.S. 335, 341 (1986); Fraire v. City of Arlington, 957 F.2d 1268, 1273 (5th Cir. 1992). "[A]n allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner." Malley, 475 U.S. at 341.

In analyzing whether an individual defendant is entitled to qualified immunity, the court considers whether plaintiff has alleged any violation of a clearly established right, and, if so,

whether the individual defendant's conduct was objectively reasonable. Siegert v. Gilley, 500 U.S. 226, 231 (1991); Duckett v. City of Cedar Park, 950 F.2d 272, 276-80 (5th Cir. 1992). In so doing, the court should not assume that plaintiff has stated a claim, i.e., asserted a violation of a constitutional right. Siegert, 500 U.S. at 232. Rather, the court must be certain that, if the facts alleged by plaintiff are true, a violation has clearly occurred. Connelly v. Comptroller, 876 F.2d 1209, 1212 (5th Cir. 1989). A mistake in judgment does not cause an officer to lose his qualified immunity defense. In Hunter, the Supreme Court explained:

> The qualified immunity standard "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." Malley, [475 U.S.] at 343. . . . This accommodation for reasonable error exists because "officials should not err always on the side of caution" because they fear being sued. . . .

502 U.S. at 229.

When a defendant relies on qualified immunity, the burden is on the plaintiff to negate the defense. Kovacic v. Villarreal, 628 F.3d 209, 211 (5th Cir. 2010); Foster v. City of Lake Jackson, 28 F.3d 425, 428 (5th Cir. 1994).

C.   Municipal Liability

The law is clearly established that the doctrine of respondent superior does not apply to § 1983 actions. Monell v.

New York City Dep't of Soc. Servs., 436 U.S. 658, 691 (1978);

Williams v. Luna, 909 F.2d 121, 123 (5th Cir. 1990).  Rather, the

misconduct of a subordinate must be affirmatively linked to the

action or inaction of the supervisor.  Southard v. Texas Bd. of

Crim. Justice, 114 F.3d 539, 550 (5th Cir. 1997).  A supervisor

may be liable under § 1983 if he, by action or inaction,

demonstrates deliberate indifference to a plaintiff's

constitutionally protected rights.  Id. at 551.  "'[D]eliberate

indifference' is a stringent standard of fault, requiring proof

that a municipal actor disregarded a known or obvious consequence

of his action."  Board of Comm'rs of Bryan Cty. v. Brown, 520

U.S. 397, 410 (1997).  Neither a supervisory official nor a

governmental entity can be held liable for failing to adopt

policies to prevent constitutional violations.  See, e.g., Vela

v. White, 703 F.2d 147, 153 (5th Cir. 1983); Reimer v. Smith, 663

F.2d 1316, 1323 (5th Cir. 1981); Wanger v. Bonner, 621 F.2d 675,

680 (5th Cir. 1980).  Moreover, a plaintiff must allege more than

an isolated incident of purported harm to establish a claim

against such person or entity.  Fraire, 957 F.2d at 1278;

McConney v. City of Houston, 863 F.2d 1180, 1184 (5th Cir. 1989);

Languirand v. Hayden, 717 F.2d 220, 227-28 (5th Cir. 1983).

Without a pattern or practice of recurring constitutional

violations, neither negligence nor gross negligence suffices as a

basis for liability.  Stokes v. Bullins, 844 F.2d 269, 274 (5th Cir. 1988).  There must be a link between the policy and the particular constitutional violation alleged.  City of Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985).

A governmental entity can be subjected to monetary damages or injunctive relief only if one of its official policies caused a person to be deprived of a federally protected right.  Monell, 436 U.S. at 694. It cannot be held liable under a theory of respondeat superior or vicarious liability.  Id.  Instead, liability may be imposed against a local government entity under § 1983 only "if the governmental body itself subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation."  Connick v. Thompson, 563 U.S. 51, 131 S. Ct. 1350, 1359 (2011) (quoting Monell, 436 U.S. at 692) (internal quotation marks omitted).  To hold an entity liable under § 1983 thus requires plaintiff to "initially allege that an official policy or custom was a cause in fact of the deprivation of rights inflicted." Spiller v. City of Texas City, Police Dept., 130 F.3d 162, 167 (5th Cir. 1997) (internal quotation marks and citation omitted). Therefore, liability against local government defendants pursuant to § 1983 requires proof of a policymaker, an official policy, and a violation of constitutional rights whose

8

"moving force" is the policy or custom.  Piotrowski v. City of
Houston, 237 F.3d 567, 578 (5th Cir. 2001).

The Fifth Circuit has been explicit in its definition of an
"official policy" that can lead to liability on the part of a
governmental entity, giving the following explanation in an
opinion issued en banc in response to a motion for rehearing in
Bennett v. City of Slidell:

> 1. A policy statement, ordinance, regulation, or
> decision that is officially adopted and promulgated by
> the municipality's lawmaking officers or by an official
> to whom the lawmakers have delegated policy-making
> authority; or
>
> 2. A persistent, widespread practice of city officials
> or employees, which, although not authorized by
> officially adopted and promulgated policy, is so common
> and well settled as to constitute a custom that fairly
> represents municipal policy. Actual or constructive
> knowledge of such custom must be attributable to the
> governing body of the municipality or to an official to
> whom that body had delegated policy-making authority.
>
> Actions of officers or employees of a municipality do
> not render the municipality liable under § 1983 unless
> they execute official policy as above defined.

735 F.2d 861, 862 (5th Cir. 1984) (per curiam).

D.   Excessive Force

The elements of an excessive force claims are (1) an injury,
(2) that resulted directly and only from a use of force that was
clearly excessive, and (3) the excessiveness was clearly
unreasonable. Freeman v. Gore, 483 F.3d 404, 416 (5th Cir. 2007).

A use of deadly force is presumptively reasonable when an officer has reason to believe that the suspect poses a threat of serious harm to the officer or to others. Mace v. City of Palestine, 333 F.3d 621, 624 (5th Cir. 2003). The reasonableness is to be determined from the perspective of the officer on the scene and not with "the 20-20 vision of hindsight." Id. at 625 (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)). Further, that the officer himself may have created the situation does not change the analysis. In other words, that the officer could have handled the situation better does not affect his entitlement to qualified immunity. Young v. City of Killeen, 775 F.2d 1349, 1352-53 (5th Cir. 1985). See also City & Cty. Of San Francisco v. Sheehan, 135 S. Ct. 1765, 1777 (2015)(failure to follow training does not itself negate entitlement to qualified immunity).

IV.

Analysis

A.   The Summary Judgment Evidence

Plaintiff filed objections[3] to the summary judgment evidence of each of the defendants. Plaintiff appears to object primarily to the legal conclusions of certain affiants. As is the court's

---

[3]Plaintiff's amended objections and appendix in support are subject to being stricken as the appendix is not properly bound, does not contain index tabs, and is not highlighted as required by the court's August 31, 2015, order.

10

custom, the court is not striking any evidence, but rather giving the summary judgment evidence whatever weight it may deserve.

B.   Undisputed Facts

During the last week of March 2013, City, through the narcotics unit of its police department, received information that cocaine was being sold at 3232 Thannisch Avenue, Fort Worth. Officers conducted surveillance and utilized a confidential informant who made several purchases at the residence. The sellers included a black male in his early 30's, 6', 300 pounds, heavy set, now known to be Darden. On May 16, 2013, the confidential informant made a purchase from Darden that field-tested positive for cocaine. City sought and obtained a search warrant for the residence. The magistrate who issued the warrant found sufficient reason to believe that to knock and announce their purpose by the officers executing the warrant would be futile, dangerous, and otherwise inhibit effective investigation.

On May 16, 2013, City utilized its zero tolerance unit to make a dynamic entry into the residence. Among other items, officers seized 2.4 grams of cocaine, 1.8 grams of heroin, and 3.125 ounces of marijuana. Orlando Cook was arrested on the scene and later pleaded guilty to possession of a controlled substance. Officers believed that some of the drugs belonged to Darden.

Officers who executed the warrant were wearing clearly marked police uniforms. Two of the officers had helmet cameras that recorded the execution of the warrant. The videos reflect that upon entry into the front of the house, officers first encountered Darden, who was on his stomach on a couch. Officers identified themselves as police and ordered all occupants of the house to get on the ground, where they would pose less danger to the officers. Darden did not get on the ground. Snow tried to pull Darden to the ground. When Snow pulled on Darden's shirt, it ripped. Snow struggled with Darden for approximately 45 seconds and then fired his taser into Darden's back. Darden briefly went down, but raised up again and Snow fired his taser a second time, approximately 16 seconds after the first shot. After firing the taser a second time, Snow stood back, holding the taser in case it was needed again. Other officers, including Romero, tried to handcuff Darden but without success. Approximately one minute and 54 seconds after entering the house and encountering Darden, officers were able to get handcuffs on him. They sat him up and called for medical personnel to assess him. At some point during the execution of the warrant, Darden died. From the video, it appears that he was unresponsive at the time officers moved him to a seated position after handcuffing him. His unresponsive

state was not recognized and emergency resuscitative efforts were not started in time to have any effect.

At the time of execution of the warrant, Romero had been a City police officer for seven years and Snow had been a City police officer for just over nine years.

The cause of Darden's death was sudden cardiac death associated with hypertensive atherosclerotic cardiovascular disease and application of restraint and secondary causes were obesity[4], hepatic steatosis, and chronic thyroiditis. Darden had multiple risk factors for sudden cardiac death and the severity of his cardiac disease alone made him susceptible to sudden cardiac death at any time, with or without physical exertion.

C.   Snow and Romero

Snow and Romero allege that they are entitled to qualified immunity; thus, the burden is on plaintiff to show that their conduct violated a clearly established constitutional right of Darden. In this, plaintiff cannot succeed. He cannot show that either Snow or Romero was plainly incompetent or knowingly violated the law. Rather, the summary judgment evidence establishes that Snow and Romero participated in the execution of a search warrant, which entitled them to detain the occupants of

---

[4]Darden weighed 340 pounds.

13

the residence. <u>Muehler v. Mena</u>, 544 U.S. 93, 98-99 (2005). Use of handcuffs to effectuate the detention was reasonable. <u>Id.</u> Telling the occupants of the house to get on the ground was reasonable. <u>Carroll v. Ellington</u>, 800 F.3d 154, 174-75 (5th Cir. 2015).

The video makes clear that Darden did not get on the ground as ordered by the officers and that the taser was employed to assist them in getting Darden to the ground. The taser was employed only twice and it is clear that Darden was not subdued by the first application. Officers struggled to get Darden handcuffed and as soon as they did so, the application of any force stopped. This is consistent with the cases plaintiff cites. Doc. 95 at 9-10. <u>See, e.g.</u>, <u>Clark v. Massengill</u>, 641 F. App'x 418, 420 (5th Cir. 2016)(once a suspect is handcuffed and subdued, and is no longer resisting, subsequent use of force is excessive). The struggle lasted less than two minutes and the officers' conduct is not to be judged by 20/20 hindsight, but rather with allowance for the need to make split-second judgments. Whether he was resisting arrest or struggling to breathe, Darden did not allow officers to handcuff him.

Given the state of Darden's health, plaintiff's argument is essentially that defendants should not have employed regular police procedures in effectuating his detention. However, he does not cite to any clearly established law to support this position.

14

Viewing the actions of Snow and Romero individually, as the law requires, Meadours v. Ermel, 483 F.3d 417, 422 (5th Cir. 2007), each is entitled to qualified immunity.

The court further notes that plaintiff could not establish an excessive force claim because he cannot show that Darden's death "resulted directly and only from the use of force that was clearly excessive to the need." Doc. 95 at 3; Knight v. Caldwell, 970 F.2d 1430, 1432 n.3 (5th Cir. 1992). As plaintiff's own expert says, the application of restraint was a contributing causal factor of Darden's death. Doc. 97 at 42.

D.   City

Inasmuch as its officers did not use excessive force, i.e., did not commit a constitutional violation, City cannot be liable for any constitutional violation. See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986). As the Supreme Court has stated:

> If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point.

Id., 475 U.S. at 799.

Plaintiff does not address City's arguments regarding his inability to succeed on his state law claims, apparently

15

conceding that City is entitled to sovereign immunity and there is no waiver of immunity for intentional torts. <u>See</u> Tex. Civ. Prac. & Rem. Code § 101.057(2); <u>Goodman v. Harris Cnty.</u>, 571 F.3d 388, 394 (5th Cir. 2009); <u>Texas Dep't of Pub. Safety v. Petta</u>, 44 S.W.3d 575, 580 (Tex. 2001); <u>Univ. of Tex. Med. Branch v. York</u>, 871 S.W.2d 175, 177 (Tex.1994); <u>Duhart v. State</u>, 610 S.W.2d 740, 742 (Tex.1980).

V.

<u>Order</u>

The court ORDERS that defendants' motions for summary judgment be, and are hereby, granted; that plaintiff take nothing on his claims against defendants; and, that such claims be, and are hereby, dismissed.

SIGNED August 10, 2016.

JOHN McBRYDE
United States District Judge