IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

DEC 1 0 2018

CLERK, U.S. DISTRICT COURT
By_____
Deputy

| | | |
|---|---|---|
| ERIC C. DARDEN, AS ADMINISTRATOR OF THE ESTATE OF JERMAINE DARDEN, | § § § § | |
| Plaintiff, | § § | |
| VS. | § § | NO. 4:15-CV-221-A |
| THE CITY OF FORT WORTH, TEXAS, ET AL., | § § § | |
| Defendants. | § § | |

MEMORANDUM OPINION AND ORDER

By memorandum opinion and order signed August 10, 2016, the court granted the motions of defendants, City of Fort Worth ("City"), W.F. Snow ("Snow"), and J. Romero ("Romero"), for summary judgment. Doc.[1] 104. Because the court determined that Snow and Romero did not commit a constitutional violation, it held that City could not be liable for any constitutional violation. Id. at 15. And, the court determined that City was entitled to sovereign immunity as to plaintiff's state law claims. Id. at 15-16. Plaintiff appealed from the court's granting of the motions. Doc. 106. The United States Court of Appeals for the Fifth Circuit reversed in part, vacated in part, and remanded the action for further proceedings. Doc. 114. Defendants filed a petition for writ of certiorari and the court

---

[1]The "Doc. __" reference is to the number of the item on the docket in this action.

granted a stay while the petition was pending. Doc. 119. The petition has now been denied. Doc. 120. Accordingly, by order signed November 15, 2018, the court lifted the stay. Doc. 122. City has requested that the court consider the merits of its summary judgment motion filed June 17, 2016. Doc. 121.

As the Fifth Circuit noted, this court did not reach the merits of plaintiff's municipal liability claims. Accordingly, the Fifth Circuit remanded for further consideration of municipal liability, expressing no opinion on the merits. Doc. 114 at 16-17. The court now considers the motion of City for summary judgment. And, having considered the motion, the response, the reply, the summary judgment evidence, the record, and applicable authorities, the court finds that the motion should be granted.

I.

## Plaintiff's Claims

The operative pleading is plaintiff's third amended complaint. Doc. 66. Plaintiff's claims arise out of the execution by Snow and Romero of a "no-knock" search warrant on May 16, 2013. Eric C. Darden ("Darden") died during the execution of the warrant after he was tased. Plaintiff alleges that Snow and Romero used excessive force and that City is liable for failure to properly train its officers. He also alleges that City is liable under state law for Snow's negligent use of the taser.

II.

## Grounds of the Motion

City maintains that plaintiff cannot establish that City had

a policy, practice, or custom that caused a deprivation of

Darden's constitutional rights.

> Specifically, the official policy of [City] has
> prohibited excessive force, and there is no custom or
> practice by department officials condoning excessive
> force. Plaintiff cannot demonstrate a deficiency in the
> Fort Worth Police Department's training or supervision
> of its officers that is capable of supporting Section
> 1983 liability because the City adequately trains all
> of its officers, and enforces its training and policies
> by supervising those officers, by investigating
> officers who are alleged to have engaged in misconduct,
> and disciplining them when warranted.

Doc. 74 at 6. City also alleges that it is entitled to sovereign

immunity as to the state law claims.

III.

## Applicable Legal Principles

A.  Summary Judgment

Rule 56(a) of the Federal Rules of Civil Procedure provides

that the court shall grant summary judgment on a claim or defense

if there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law.  Fed. R. Civ.

P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247

(1986).  The movant bears the initial burden of pointing out to

the court that there is no genuine dispute as to any material

3

fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 325 (1986).
The movant can discharge this burden by pointing out the absence
of evidence supporting one or more essential elements of the
nonmoving party's claim, "since a complete failure of proof
concerning an essential element of the nonmoving party's case
necessarily renders all other facts immaterial." <u>Id.</u> at 323.
Once the movant has carried its burden under Rule 56(a), the
nonmoving party must identify evidence in the record that creates
a genuine dispute as to each of the challenged elements of its
case. <u>Id.</u> at 324; <u>see also</u> Fed. R. Civ. P. 56(c) ("A party
asserting that a fact . . . is genuinely disputed must support
the assertion by . . . citing to particular parts of materials in
the record . . . ."). If the evidence identified could not lead
a rational trier of fact to find in favor of the nonmoving party
as to each essential element of the nonmoving party's case, there
is no genuine dispute for trial and summary judgment is
appropriate. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>,
475 U.S. 574, 587, 597 (1986). In <u>Mississippi Prot. & Advocacy
Sys., Inc. v. Cotten</u>, the Fifth Circuit explained:

> Where the record, including affidavits,
> interrogatories, admissions, and depositions could not,
> as a whole, lead a rational trier of fact to find for
> the nonmoving party, there is no issue for trial.

929 F.2d 1054, 1058 (5th Cir. 1991).

4

The standard for granting a motion for summary judgment is the same as the standard for rendering judgment as a matter of law.[2] Celotex Corp., 477 U.S. at 323. If the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. Matsushita, 475 U.S. at 597; see also Mississippi Prot. & Advocacy Sys., 929 F.2d at 1058.

B.    Municipal Liability

The law is clearly established that the doctrine of respondent superior does not apply to § 1983 actions. Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 691 (1978); Williams v. Luna, 909 F.2d 121, 123 (5th Cir. 1990). Liability may be imposed against a municipality only if the governmental body itself subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation. Connick v. Thompson, 563 U.S. 51, 60 (2011). Local governments are responsible only for their own illegal acts. Id. (quoting Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986)). Thus, plaintiffs who seek to impose liability on local governments under § 1983 must prove that action pursuant to official municipal policy caused their injury. Monell, 436 U.S. at 691. Specifically, there must

---

[2]In Boeing Co. v. Shipman, 411 F.2d 365, 374-75 (5th Cir. 1969) (en banc), the Fifth Circuit explained the standard to be applied in determining whether the court should enter judgment on motions for directed verdict or for judgment notwithstanding the verdict.

be an affirmative link between the policy and the particular constitutional violation alleged. City of Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985).

Proof of a single incident of unconstitutional activity is not sufficient to impose liability, unless proof of the incident includes proof that it was caused by an existing, unconstitutional policy, which policy can be attributed to a municipal policymaker. Tuttle, 471 U.S. at 823-24. (If the policy itself is not unconstitutional, considerably more proof than a single incident will be necessary to establish both the requisite fault and the causal connection between the policy and the constitutional deprivation. Id. at 824.) Thus, to establish municipal liability requires proof of three elements: a policymaker, an official policy, and a violation of constitutional rights whose moving force is the policy or custom. Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001).

The Fifth Circuit has been explicit in its definition of an "official policy" that can lead to liability on the part of a governmental entity, giving the following explanation in an opinion issued en banc in response to a motion for rehearing in Bennett v. City of Slidell:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official

6

to whom the lawmakers have delegated policy-making authority; or

2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

735 F.2d 861, 862 (5th Cir. 1984) (per curiam).

The general rule is that allegations of isolated incidents are insufficient to establish a custom or policy. Fraire v. City of Arlington, 957 F.2d 1268, 1278 (5th Cir. 1992); McConney v. City of Houston, 863 F.2d 1180, 1184 (5th Cir. 1989); Languirand v. Hayden, 717 F.2d 220, 227-28 (5th Cir. 1983).

C.   Texas Tort Claims Act

Under the Texas doctrine of sovereign immunity, a governmental entity cannot be held liable for the actions of its employees unless a constitutional or statutory provision waives its sovereign immunity in clear and unambiguous language. See Univ. of Tex. Med. Branch v. York, 871 S.W.2d 175, 177 (Tex. 1994); Duhart v. State, 610 S.W.2d 740, 742 (Tex. 1980). The Texas Tort Claims Act provides such a waiver in certain circumstances. Tex. Civ. Prac. & Rem. Code § 101.025; York, 871

7

S.W.2d at 177. However, the Act does not waive immunity with respect to claims "arising out of assault, battery, false imprisonment, or any other intentional tort." Tex. Civ. Prac. & Rem. Code § 101.057(2); see Goodman v. Harris County, 571 F.3d 388, 394 (5th Cir. 2009). Use of excessive force is an intentional tort and an alternative negligence pleading cannot save the claim where the claim is based on the same conduct as the intentional tort claim. Saenz v. City of El Paso, 637 F. App'x 828, 830-31 (5th Cir. 2016); Cox v. City of Fort Worth, 762 F. Supp. 2d 926, 935 (N.D. Tex. 2010).

IV.

### Facts Established by Summary Judgment Evidence

The summary judgment evidence[3] establishes:

The conduct of City police officers is primarily controlled by the police department's General Orders, copies of which are issued to each officer upon admission to the Fort Worth Police Academy. When General Orders are revised, each officer is issued and/or emailed a copy of the revised orders. Each officer is require to read, know, and follow the provisions of the General Orders. All officers are trained in the application of the General Orders and are required to comply with them. Failure to

---

[3]Plaintiff has filed amended objections and a motion to strike portions of the summary judgment evidence. Doc. 98. The court is not granting the motion, but, as is its custom, giving the summary judgment evidence whatever weight it may deserve.

comply could result in discipline, including termination of employment. Doc. 77 at 53-54. In addition, all peace officers in the State of Texas must meet the training and continuing education standards of the Texas Commission on Law Enforcement and failure to adhere to those standards may result in suspension of an officer's license. Id. at 67.

On the date of Darden's death, City had the following General Orders in place:

1. 306.04, providing in pertinent part:

B. Under no circumstances will the force used by an officer be greater than necessary to make an arrest or a detention or to protect oneself or another, nore will the force be used longer than necessary to subdue the suspect, and deadly force shall not be used except as specifically provided in this directive.

. . .

F. Force shall only be used to make an arrest or detention, and then, only the minimum amount of force necessary shall be used.

Id. at 54-55, 57.

2. 306.05, providing in pertinent part:

An officer's use of force shall be objectively reasonable and shall be the minimum amount of force necessary to make the arrest or detention.

Id. And,

c. Conducted Energy Device (CED) or Chemical Agent:
(1) Use of the CED or chemical agent force options shall be restricted to situations where the officer has probable cause to arrest and engaging the suspect would expose the officer to a reasonably defined risk or

tactical disadvantage. The officer must be able to articulate a reasonable belief that there is a potential or immediate threat. Once the officer has gained compliance, the use of force options (technique) shall be followed by an alternate method of control or apprehension.

Id. at 54-55, 58.

3. 306.09, providing:
A. All use of force incidents which result in injury, involve the use of a chemical agent, or any use of force incident during which the level of force used is hard open-hand control and restraint or greater shall be reported and identified as "Use of Force by an Officer."
1. Officers shall report the full details of the use of force in related arrests or offense reports. If no arrest or offense report is to be completed, the details shall be reported in an incident report. A separate inter-office correspondence will be completed by the supervisor and forwarded through the officer's chain of command to be reviewed and filed by the bureau.
2. All reports in which the details of a use of force incident is reported shall be completed prior to the end of watch. These reports shall be flagged *Use of Force* and routed to the captain of the involved officer for management review.
3. Captains shall review each use of force report to determine if there is a need for changes in departmental procedures or additional training for the officer. Additional training for the officer may be based on whether the involved officer has had previous incidents indicating the officer is prone to violence or the need for referrals to the department psychologist. The captain shall take appropriate action based on the basis of their determination.
4. All completed use of force reports and inter-office correspondence shall be forwarded to the Training Division for review.
5. Deputy chief shall conduct periodic audits to ensure the objectives of management review are being met.
6. Any use by an officer of a flashlight as a weapon or the use of a weapon or device taken from a citizen

shall be reported as a Critical Police Incident and
handled in accordance with General Order 356.00.

Id. at 54-55, 59.

4. 702.00, which provides in pertinent part:

B. Officers of the Fort Worth Police Department shall
acquire a working knowledge of the General Orders, city
ordinances, *Texas Code of Criminal Procedure*, *Texas
Penal Code*, federal statutes, and current court cases.

C. All officers and employees shall comply with the
General Orders, special orders, directives, procedures
of the department, orders and instructions of
supervising officers, federal law, state law, and city
ordinances.

Id. at 54-55, 61.

5. 314.01, which provides in pertinent part:

A. Arrests may be made when a warrant of arrest has
been issued by an authorized magistrate or when arrest
without a warrant is authorized under the laws of the
United States, laws of the State of Texas, or the
ordinances of Fort Worth.

Id. at 54-55, 62.

6. 504.01(J), which provides in pertinent part:

3. Officers shall consider the age and physical
condition of the subject when determining whether the
CED is an appropriate option. Generally, unless exigent
circumstances exist, the CED should not be discharged
on a person
a. under the age of eleven (11),
b. above the age of seventy (70),
c. who is visibly frail, or
d. who is pregnant.

. . .

8. Upon activating the CED in either the drive stun
mode or the cartridge mode, officers shall use the CED

11

for one (1) standard five (5) second cycle and stop to
evaluate the situation. If additional cycles are
necessary, the number of cycles and duration of those
cycles shall be the minimum necessary to place the
subject into custody.
9. CEDs are prohibited from being used:
a. In a punitive or coercive manner
b. against persons displaying passive non-compliance;
or
On any subject who does not demonstrate their over
intention to use violence or force against themselves,
the officer or another person.

. . .

11. Once handcuffed and under control, all persons will
be placed in an upright position that does not impair
respiration.

. . .

13. Once the CED has been activated, officers shall
seek medical assistance for subjects who:
a. May have pre-existing medical issues, including
pregnancy,
b. Appear to be under the influence of a narcotic or
controlled substance,
c. Receive three (3) or more electrical cycles from the
CED or receive cycles for more than a cumulative 15
seconds, or
d. Appear non-responsive, ill, or have difficulty
breathing.

Id. at 54-55, 63-64.

Rachel DeHoyos was the supervisor of Snow and Romero.

Because force was used by them, she reviewed their conduct with

regard to Darden and determined that the use of force was

justified. Other supervisors in her chain of command also

reviewed the incident and made the same determination. Doc. 77 at

54-55. The "Major Case Division" of City's police department

conducted an investigation and turned its finding over to a grand jury, which declined to indict Snow. Id. at 80-81.

Defendant Snow has been employed as a police officer with City since January 5, 2004. He attended and completed training at the Fort Worth Police Academy in 2004 and has never received any form of discipline. Doc. 77 at 12. Snow believed that he acted in a manner consistent with his training and standard police practices in his dealings with Darden. Id. at 21. Defendant Romero has been employed as a police officer since 2007. At the time of the incident, Snow and Romero had received hundreds of hours of training.[4] Id. at 68-79.

IV.

## Analysis

City maintains that plaintiff cannot establish anything more than a isolated incident of alleged misconduct. Plaintiff admits that his burden is to show City's training procedures were inadequate, City was deliberately indifferent in adopting its training policy, and the inadequate training policy directly caused the violations in question. Doc. 95 at 11-12. Plaintiff must show how the particular training program is defective; an isolated violation does not support a failure to train. Zarnow v.

---

[4]At the time the motion for summary judgment was filed, records reflected that Romero had accrued 3113 hours and Snow 3516 hours of education and training. Doc. 77 at 73, 79.

City of Wichita Falls, 614 F.3d 161, 170 (5th Cir. 2010).
Further, if training procedures comply with state law, that
factors against failure to train. Id. at 171; Morris v. Dallas
County, 960 F. Supp. 2d 665, 685 (N.D. Tex. 2013).

A municipality's liability is at its most tenuous when a
claim turns on failure to train. Connick, 563 U.S. at 61. It is
not enough to show that an officer could have been better
trained. City of Canton v. Harris, 489 U.S. 378, 390-91 (1989). A
training program is adequate if it allows officers to respond
properly to the usual and recurring situations with which they
must deal. Id. at 391. The issue is whether the failure to train
amounts to deliberate indifference to the rights of persons with
whom the police come into contact. Id. at 388. In other words,
one officer's unsatisfactory training will not establish
municipal liability because that officer's shortcomings or
mistakes may have been caused by factors other than deficient
training. Morris, 960 F. Supp. 2d at 685.

In this case, plaintiff points to training that it is
acceptable to punch suspects in the face to jump to the
conclusion that City's officers were not adequately trained as to
use of force. Doc. 95 at 13, 15. Even assuming plaintiff could
show that City's officers received training that it is acceptable
to punch and kick people in the face for no reason--which is

14

absolutely absurd-- plaintiff has not shown how such training predictably caused Darden's death. See Estate of Davis ex rel. McCully v. City of N. Richland Hills, 406 F.3d 375, 385-86 (5th Cir. 2005).

Plaintiff also refers to lack of training about how to care for suspects who complain they cannot breathe or who are obese. Id. 12-14, 16. He also complains about failure to perform CPR on Darden. Id. at 13. But, as City points out, plaintiff did not plead that City had a policy, practice or custom of violating its citizens' constitutional rights by failing to train regarding rendering medical care. But, in any event, plaintiff has not pointed to any other incident in which an obese suspect died due to City's failure in any respect to train its officers. Pursuant to policy, an ambulance was stationed near the scene; when the taser was deployed, the ambulance was called; and, a second call was made when officers realized Darden was in distress. Doc. 77 at 20, 92.

Finally, plaintiff seems to take the position that because he has an expert and City has an expert, there must be a fact issue for a jury to determine. However, the conclusion of plaintiff's expert that officers "utilized more force than the situation required," doc. 95 at 15, does not establish a genuine fact issue for trial. See Connick, 563 U.S. at 68 (proving that

an injury could have been avoided through better training will not suffice).

Plaintiff does not address City's arguments regarding his inability to succeed on his state law claims, apparently conceding that City is entitled to sovereign immunity and there is no waiver of immunity for intentional torts. See Tex. Civ. Prac. & Rem. Code § 101.057(2); Goodman v. Harris Cnty., 571 F.3d 388, 394 (5th Cir. 2009); Texas Dep't of Pub. Safety v. Petta, 44 S.W.3d 575, 580 (Tex. 2001); Univ. of Tex. Med. Branch v. York, 871 S.W.2d 175, 177 (Tex.1994); Duhart v. State, 610 S.W.2d 740, 742 (Tex.1980).

V.

Order

The court ORDERS that City's motion for summary judgment be, and is hereby, granted, that plaintiff take nothing on his claims against City, and that such claims be, and are hereby, dismissed.

The court determines that there is no just reason for delay in, and hereby directs, entry of final judgment as to the disposition of plaintiff's claims against City.

SIGNED December 10, 2018.

_____
JOHN MCBRYDE
United States District Judge

16