ORIGINAL

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

ERIC C. DARDEN, as Administrator of the §
Estate of Jermaine Darden,                §
    Plaintiff,                            §
                                          §
                                          §   CIVIL ACTION NO. 4:15-CV-221-A
v.                                        §
                                          §
THE CITY OF FORT WORTH, TEXAS, et al., §
    Defendants.                           §

**DEFENDANTS'[1] EMERGENCY MOTION TO
ADD INADVERTENTLY OMITTED EXHIBIT
AND BRIEF IN SUPPORT THEREOF**

TO THE HONORABLE JUDGE OF SAID COURT:

    Defendants herein file this their Emergency Motion to Add Inadvertently Omitted Exhibit,

and would respectfully show unto the Court as follows:

    Defendants, W.F. Snow and J. Romero, move to add to the trial exhibits a single, critical

exhibit, the Autopsy Report of Jermaine Darden, attached hereto as Exhibit "A," which is an exhibit

that was an agreed exhibit, in fact it was Exhibit No. 1, when the parties filed their exhibit list the

first time they were preparing for trial in this case. See ECF No. 103. This time, however, plaintiff's

counsel removed the exhibit from the agreed list, and, in the midst of a long, at times confusing, at

times contentious, and taxing joint session, defense counsel, having long considered the

autopsy report as being an agreed exhibit, inadvertently failed to realize it was no longer part of the

documents and to add it back in as one of their exhibits. Defendants, therefore, respectfully request

---

[1] Counsel for defendant Romero states he wishes to join this motion but is unavailable to add his
signature until tomorrow. Due to the nature and urgency of this motion, however, it is being submitted by
defendant Snow's counsel only at this time.

the Court's permission to add the Autopsy Report to the set of exhibits and exhibit list, as what would become Exhibit No. 145, i.e., the last item under Defendant's Exhibits and the last exhibit overall.

 As soon as this error was discovered, yesterday evening, defense counsel immediately contacted counsel for plaintiff. Mr. Lee Thomas spoke with plaintiff's counsel, Daryl Washington by phone, and Mr. Washington was not willing to agree to the relief requested herein but indicated he wished to discuss it with his co-counsel. This morning at approximately 9 a.m., the undersigned counsel for defendant Snow called Mr. Washington's office and was given voice mail and left a message, followed by an email to all plaintiff's counsel. In response, Mr. Washington replied that he also noticed an exhibit concerning some specific FWPD general orders that was taken out of defendants' list and he failed to add as a plaintiff's exhibit. Mr. Washington stated he would be unavailable after 10 a.m. The undersigned immediately emailed Mr. Washington back asking for a copy of the exhibit as the undersigned is honestly not sure what exhibit he is referencing. Mr. Washington did not forward the desired exhibit but said defense counsel should know what he is referencing. The undersigned still does not understand exactly what item (or perhaps portions of an item) counsel is referencing, but to the extent such an item was omitted as described, and defense counsel do not doubt that could have happened, defense counsel would not object to plaintiffs submitting that item as an additional exhibit as well. But due to the critical nature of the attached exhibit and defendant's belief that this is an urgent matter to bring to the Court's attention, this motion is being filed at this time as at least not yet unopposed.

 Because this request is made only a few days after the parties submitted their exhibit list and still more than a month in advance of trial, and it involves an exhibit that is of no surprise to plaintiff

(and, in fact, was previously agreed by plaintiff), granting this motion to add the exhibit should cause no delay and should cause no prejudice to plaintiff. Defendants would, of course, expect the Court to provide plaintiff an opportunity to submit whatever objections he may have to the exhibit. Defense counsel sincerely apologizes for this mistake, and respectfully requests the Court grant this motion in the interest of justice.

WHEREFORE, PREMISES CONSIDERED, Defendants pray that the Court allow the inclusion of the attached Autopsy Report of Jermaine Darden as a defense exhibit.

Respectfully submitted,

Kenneth E. East
State Bar No. 00790622
The Law Office of Kenneth E. East
9001 Airport Freeway, Suite 675
North Richland Hills, Texas  76180
(817) 788-1111
Fax:  (817) 485-2836
ken1@airmail.net
ken@fostereast.com

ATTORNEY FOR DEFENDANT
W.F. SNOW

## CERTIFICATE OF CONFERENCE

As soon as this error was discovered, yesterday evening, defense counsel immediately contacted counsel for plaintiff. Mr. Lee Thomas spoke with plaintiff's counsel, Daryl Washington by phone, and Mr. Washington was not willing to agree to the relief requested herein but indicated he wished to discuss it with his co-counsel. This morning at approximately 9 a.m., the undersigned counsel for defendant Snow called Mr. Washington's office and was given voice mail and left a message, followed by an email to all plaintiff's counsel. In response, Mr. Washington replied that he also noticed an exhibit concerning some specific FWPD general orders that was taken out of defendants' list and he failed to add as a plaintiff's exhibit. Mr. Washington stated he would be unavailable after 10 a.m. The undersigned immediately emailed Mr. Washington back asking for a copy of the exhibit as the undersigned is honestly not sure what exhibit he is referencing. Mr. Washington did not forward the desired exhibit but said defense counsel should know what he is referencing. The undersigned still does not understand exactly what item (or perhaps portions of an item) counsel is referencing, but to the extent such an item was omitted as described, and defense counsel do not doubt that could have happened, defense counsel would not object to plaintiffs submitting that item as an additional exhibit as well. But due to the critical nature of the attached exhibit and defendant's belief that this is an urgent matter to bring to the Court's attention, this motion is being filed at this time as at least not yet unopposed.

Kenneth E. East

## CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2019, I served a copy of this document on all parties or their counsel of record.

Kenneth E. East



Office of Chief Medical Examiner
Tarrant County Medical Examiner's District
Tarrant County, Texas
200 Feliks Gwozdz Place, Fort Worth, Texas 76104-4919
(817) 920-5700  FAX (817) 920-5713

# AUTOPSY REPORT

**Name: Jermaine N. Darden**
**Approximate Age: 34 Years**
**Height: 68 Inches**

**CASE NO: 1306402**
**Sex: Male**
**Weight: 340 Pounds**

I hereby certify that on the **17th** day of **May 2013**, beginning at 1111 hours, I, **Lloyd White, M.D., Ph.D.**, pursuant to Statute 49.25 of Texas Criminal Code, performed a complete autopsy on the body of **Jermaine N. Darden** at the Tarrant County Medical Examiner's District Morgue in Fort Worth, Texas and upon investigation of the essential facts concerning the circumstances of the death and history of the case as known to me, I am of the opinion that the findings, cause and manner of death are as follows:

**FINDINGS:**

I) Investigative findings:

A. Subject engaged in physical struggle with police after failing to comply with instructions during search warrant.

B. Taser deployed x 2 for 5-second duration each, on 5/16/2013 at 16:14:51 and 16:15:07. Device report for Model #TASER_ECD_x2, Serial #X29000FPP was reviewed.

C. Video of incident reviewed at Critical Case Review on 8/21/2013 that showed physical struggle during which subject was tased x 2 and continued to struggle with police. He was subsequently handcuffed while in a prone position and was then placed into a seated position with his hands behind his back. At this point, he was noted to be alert and breathing on the video.

D. At this point, it was reported to TCME investigators that the subject stated that he had asthma and was experiencing shortness of breath. He subsequently became unresponsive and resuscitative efforts were initiated.

E. The subject arrived in the emergency department at 1701; the code started at 1707, ending at 1709 when he was pronounced dead. Narcan and Epinephrine were administered.

F. Hospital notes indicated that the subject became unresponsive during the second Taser deployment; however, review of the videotaped incident does not support this statement.



_____ 1306402
Jermaine N. Darden

II) Autopsy findings:
   A. Hypertensive atherosclerotic cardiovascular disease
     1) Focally severe atherosclerosis with 90% stenosis of left anterior descending coronary artery
     2) Concentric left ventricular hypertrophy (2.8 cm); borderline right ventricular hypertrophy
     3) Cardiac weight 477 gms (expected 479 +/-60 gms for weight, 316 (upper limit 446) gms for height)
   B. Pulmonary congestion and edema, patchy; no acute or chronic asthmatic changes; focal early acute pneumonia; hemosiderin-laden macrophages
   C. Hepatic steatosis, marked, with mild portal chronic inflammation
   D. Brain with perivascular hemosiderin deposition
   E. Diffuse chronic thyroiditis
   F. Superficial contusion of right forehead; abrasions (2) of back
III) Toxicology: Positive for XLR-11 (synthetic cannabinoid) in aortic blood; negative for ethanol or other drugs

_____ 1306402
Jermaine N. Darden

**CAUSE OF DEATH:**
I)     SUDDEN CARDIAC DEATH ASSOCIATED WITH HYPERTENSIVE
       ATHEROSCLEROTIC CARDIOVASCULAR DISEASE AND
       APPLICATION OF RESTRAINT
II)    OBESITY, HEPATIC STEATOSIS; CHRONIC THYROIDITIS

**MANNER OF DEATH:   NATURAL**

**COMMENT:**  This case was presented at Critical Case Review on 8/21/2013 and 8/28/2013, and a consensus opinion was obtained regarding cause and manner of death.  Available information regarding the incident was reviewed, along with autopsy findings and video of the incident itself.  Autopsy findings are significant for an obese male with severe cardiovascular disease, chronic thyroiditis, and hepatic steatosis.  There is no significant injury of the head or torso, and no injury of the anterior neck identified.  Toxicology examination reveals the presence of a synthetic cannabinoid in the blood, XLR-11.  Review of video of the incident reveals that there was a struggle with police when the subject was noncompliant with instructions, during which he was tased twice and held in a prone position on the ground while being handcuffed.  Following this, he was placed in a seated position; at this time, he was awake; however, subsequently became unresponsive.  There was no direct contribution of Taser deployment in his death.  The significance of the synthetic cannabinoid is uncertain; however, as a group they are potentially cardiotoxic, particularly in the presence of significant underlying heart disease.

_____               **Tasha Z. Greenberg, M.D.**
          Signature                            *Deputy Medical Examiner*

Page 4 of 9

1306402
Jermaine N. Darden

A complete autopsy is carried out at the Tarrant County Medical Examiner's Morgue.

## GROSS ANATOMIC DESCRIPTION

**I.      CLOTHING AND PERSONAL EFFECTS:**   The body is received in the autopsy room in a white vinyl remains removal pouch, and is dressed only in green boxer shorts.  There is no jewelry.

**II.      THERAPEUTIC INTERVENTION:**   Evidence of medical treatment includes an oral endotracheal tube, and a left tibial needle.

**III.     EXTERNAL BODY DESCRIPTION:**

The body is presumptively identified by ankle band and is that of an obese, dark brown complexioned, conventionally black man, 68 inches in stature, weighing 340 pounds, and appearing the stated age of 34 years.  Rigor is complete but livor is not visible due to the dark complexion.  Up to 1/8 inch in length, scalp hair is black and tightly curly (male pattern baldness is present) with a 1/8 inch in length mustache and ¼ inch beard.  Irides are brown, pupils are 4 mm in diameter and equal, and teeth are natural and in good condition.  External ears and ear canals are normal, nares are patent, and the nasal septum is intact. Both earlobes are pierced.  There are no fractures, amputations, or congenital malformations of upper or lower extremities.  External genitalia are those of a normally developed man.  There is an irregular, ½-inch contusion of the upper right forehead, there is a round, 3/16 inch diameter superficial abrasion of the left posterior chest just below the scapula, and there is a similar circular 3/16 inch abrasion in the midline over the lower thoracic spine.  Thorough examination of the body surface, including the back, reveals no additional evidence of injury.

There is a 2 inch midsagittal linear scar over the lumbar spine, there are numerous irregular, no more than ¼ inch scars over the anterior surfaces of both legs, there are a few similar circular scars on the anterior abdomen and medial bilateral thighs, and there is a single, round ¼ inch scar near the center of the dorsal surface of the left hand.  Around the right arm and forearm, there is a complex tattoo design, which includes birds, dollar signs, bundles of paper money, the face of a pig, and illegible lettering.  Around the left arm and forearm,

1306402
Jermaine N. Darden

there is a complex tattoo design, which includes flames, a star, "Texas Made", "OUTLAW 38", and "Dashawn Daylin 1996, 1999".

## IV.    INTERNAL EXAMINATION:

### BODY WALL AND SEROUS CAVITIES:

The neck, chest, and abdomen are opened by means of a standard Y-shaped incision. Viscera are examined *in situ* then removed for dissection according to the method of Virchow. Thoracic and abdominal walls are intact and normally developed, with a 2-1/2 inch anterior abdominal *panniculus adiposus*. Normally distributed subcutaneous fat tissue is moist and bright yellow. Pleural, pericardial, and peritoneal cavities are lined by smooth, blue-purple membranes without adhesions, and all contain normal quantities of transparent, pale yellow serous fluid. Soft tissues of the mediastinum, retroperitoneum, omentum, and mesenteries are grossly normal. No hemorrhage or other signs of injury are present.

### NECK ORGANS

Bones and cartilages of the larynx and cervical spine are intact, as is the hyoid bone, on palpation and direct gross visualization. On dissection of the soft tissues of the neck, no hemorrhage, or other gross evidence of injury or natural disease are demonstrated.

### CARDIOVASCULAR SYSTEM

The heart weighs 447 gms and the epicardium and endocardium are grossly normal. There is greater than 90% stenosis of the proximal anterior intraventricular artery, with no more than 10% stenosis of the circumflex and right coronary arteries by soft atheromatous plaque. Left and right ventricular walls are symmetrically hypertrophied, the left 2.8 cm in thickness and the right 0.5 cm. Cut surfaces of the myocardium are everywhere uniform and dark brown, without scars or other grossly discrete lesions. Valve cusps are soft and pliable, with minimal atheromatous changes and no anatomical stenosis or insufficiency. There are mild depositions of atheromatous plaque without calcification on the aortic intima, and ostia of major branches are widely patent. The great veins are normal throughout.

Page 6 of 9

_____ 1306402
Jermaine N. Darden

## RESPIRATORY TRACT

The left lung weighs 521 gms and the right 764 gms. Airways are patent; containing no foreign objects or material, and the mucosa is covered by abundant, somewhat frothy, pale gray mucus. Both lungs are firm, non-crepitant, and somewhat boggy in consistency, with smooth, shiny dark blue-purple external surfaces, and moist dark red-purple cut surfaces, which ooze frothy, thin dark gray or red-purple fluid on sectioning. Anthracosis is moderate. Wide dissection of the parenchyma reveals no cysts, masses, granulomas, or other grossly discrete lesions of natural disease.

## GASTROINTESTINAL TRACT

The gastric lumen contains approximately four, no more than 1 inch in dimension, pieces of partly digested meat. The mucosa and wall of the esophagus and stomach are normal in appearance. External examination of the small bowel and colon reveals no hemorrhage, masses, or other evidence of injury or natural disease, and the vermiform appendix is grossly normal.

## MAJOR DIGESTIVE ORGANS

The pancreas is soft and uniformly pale brown, dissection revealing no masses, hemorrhage, or other grossly discrete abnormalities.

The liver weighs 3289 gms, with a blue-purple capsule, and a uniform dark brown cut surface. Wide dissection reveals no cysts, masses, or other grossly discrete lesions of natural disease, and the parenchyma is normal in consistency. The gallbladder contains an estimated 10 mL of dark yellow-green bile without stones, and the extrahepatic biliary tract is patent and grossly normal.

## LYMPHORETICULAR SYSTEM

The spleen weighs 179 gms, with a dark blue-purple capsule and a firm, uniformly dark red-purple cut surface without scars, infarcts, or other grossly discrete abnormalities of natural disease. There is no lymphadenopathy, and spinal bone marrow is normal in appearance. The thymus is involuted.

## ENDOCRINE ORGANS

The pituitary, thyroid, parathyroids, and suprarenals are grossly normal.

1306402
Jermaine N. Darden

## URINARY TRACT

The left kidney weighs 229 gms and the right 211 gms. Capsules strip easily to reveal smooth, brown external surfaces. Cut surface architecture is normal, there being no cysts, masses, or other grossly discrete pathologic lesions. Pelves and ureters are patent and normal in appearance. The urinary bladder contains an estimated 5 mL of pale yellow, transparent urine, and the mucosa and wall are grossly normal.

## REPRODUCTIVE ORGANS

Both testes are palpable in the scrotum, without masses, injury, or deformity and the prostate and seminal vesicles are grossly unremarkable for a man of this age.

## CRANIUM AND CENTRAL NERVOUS SYSTEM

A craniotomy and removal of the brain are carried out through a coronal mastoid-to-mastoid incision of the scalp, reflection of which reveals a right frontal contusion, which has been previously noted. The calvarium is intact and normal in configuration. The dura is normal in appearance and the leptomeninges are transparent and grossly normal. There are no abnormalities of vessels at the base of the brain. The brain weighs 1403 gms, with a normal gyral pattern. Multiple transverse sections of brainstem and cerebellum, together with coronal sections of the cerebral hemispheres, reveal no cysts, masses, hemorrhage, or other gross evidence of injury or natural disease. On stripping of the dura, the base of the skull is intact and normal in configuration.

The spinal cord is not examined.

1306402
Jermaine N. Darden

## SPECIMENS AND EVIDENCE COLLECTED

1.  30 mL of aortic blood, 30 mL of femoral blood, 5 mL of urine, and 5 mL of vitreous humor for possible further examination
2.  Representative tissue samples preserved in formalin for possible further examination
3.  Two tissue cassettes for microscopic examination
4.  One blood card
5.  Representative photographs

EDC: 8/16/13
Dictated: 5/17/13
Transcribed: 5/20/13
Completed: 8/28/13
LW:caa

1306402
Jermaine N. Darden

# HISTOLOGY

**HEART:**   Mildly hypertrophic myocytes, small vessel disease with medial hypertrophy, increased perivascular fibrosis.   Coronary artery sections show 75-90% stenosis by atherosclerotic plaque.

**LUNGS:**  Patchy edema, hemosiderin-laden macrophages in alveoli, congestion; no mucus plugging or eosinophilic infiltrate noted to suggest acute asthmatic changes; no significant muscular or glandular hypertrophy noted to suggest chronic asthmatic changes; small focus of acute neutrophilic infiltration in alveoli; occasional platelet thrombi.

**LIVER:**   Diffuse, prominent centrilobular steatosis, primarily macrovesicular; minimal portal chronic inflammation with focal spillover.

**THYROID:** Diffuse lymphocytic infiltrate with fibrosis-forming nodules; no Hürthle cell proliferation.
**BRAIN:**  Perivascular hemosiderin deposition.

**KIDNEY:**  Autolysis, medullary congestion.

**HILAR LYMPH NODE:**  Anthracosis.

Trachea, spleen, stomach, pancreas, colon, adrenal gland, skeletal muscle – no significant histopathologic change.

# Office of Chief Medical Examiner
## Tarrant, Denton and Parker Counties, Texas

ME-18A GPC-1953 Rev. 7/06

200 Feliks Gwozdz Place, Fort Worth, Texas 76104-4919 ◆ (817) 920-5700

Examiner: _Klutten-Caa_                Autopsy No. _T/306402_



1/2" jugular

3/16" wound

3/16" ruse

## Toxicology Test Results

Office of Chief Medical Examiner
Toxicology Laboratory Service
200 Feliks Gwozdz Place
Fort Worth, Texas 76104
Name: Jermaine N Darden
Case Number: 1306402
Toxicology Work Number: 1301215

Nizam Peerwani, M.D., DABFP
Chief Medical Examiner
Robert Johnson, PH.D., DABFT
Chief Toxicologist
Priority: 0
Service Request Number: 003

| Specimen | Drug | Result | Drug Amount | Performed By |
|---|---|---|---|---|
| FEMORAL BLOOD | ETHANOL | NEGATIVE | | J. HO |
| URINE | AMPHETAMINE ELISA | NEGATIVE | | B. LANDRY |
| URINE | METHAMPHETAMINE ELISA | NEGATIVE | | B. LANDRY |
| URINE | THC ELISA | NEGATIVE | | B. LANDRY |
| URINE | OPIATES ELISA | NEGATIVE | | B. LANDRY |
| URINE | COCAINE ELISA | NEGATIVE | | B. LANDRY |
| URINE | BENZODIAZEPINES ELISA | NEGATIVE | | B. LANDRY |
| URINE | OXYCODONE ELISA | NEGATIVE | | B. LANDRY |
| URINE | ACID | NEGATIVE | | T. FLOWERS |
| URINE | BASE | NEGATIVE | | T. FLOWERS |

Report Prepared By: _(signature)_

Approved By: _(signature)_

Approved Date: 6/5/13



**NMS Labs**

CONFIDENTIAL

3701 Welsh Road, PO Box 433A, Willow Grove, PA 19090-0437
Phone: (215) 657-4900   Fax: (215) 657-2972
e-mail: nms@nmslabs.com
Robert A. Middleberg, PhD, DABFT, DABCC-TC, Laboratory Director

## Toxicology Report

**Report Issued**   06/15/2013 19:00

To:   **10147**
Tarrant County Medical Examiner
Office of the Medical Examiner
200 Feliks Gwozdz Place
Fort Worth, TX  761044919

| | |
|---|---|
| Patient Name | DARDEN, JERMAINE N. |
| Patient ID | ME# 1306402 |
| Chain | 11443345 |
| Age | 34 Y |
| Gender | Male |
| Workorder | 13139386 |

**Page 1 of 3**

### Positive Findings:

| Compound | Result | Units | Matrix Source |
|---|---|---|---|
| XLR-11 | Positive | ng/mL | Aortic Blood |

See Detailed Findings section for additional information

### Testing Requested:

| Analysis Code | Description |
|---|---|
| 9560B | Synthetic Cannabinoids Screen, Blood (Forensic) |

### Specimens Received:

| ID | Tube/Container | Volume/Mass | Collection Date/Time | Matrix Source | Miscellaneous Information |
|---|---|---|---|---|---|
| 001 | Red Vial | 3.25 mL | 05/17/2013 11:11 | Aortic Blood | |

All sample volumes/weights are approximations.

Specimens received on 05/31/2013.

v.8



## Detailed Findings:

| Analysis and Comments | Result | Units | Rpt. Limit | Specimen Source | Analysis By |
|---|---|---|---|---|---|
| XLR-11 | Positive | ng/mL | 0.10 | 001 - Aortic Blood | LC-MS/MS |

**Other than the above findings, examination of the specimen(s) submitted did not reveal any positive findings of toxicological significance by procedures outlined in the accompanying Analysis Summary.**

## Reference Comments:

1.   XLR-11 (K2; Space; Spice; Spike; Synthetic Cannabinoids; Yucatan Fire) - Aortic Blood:

     XLR-11, a synthetic cannabinoid, has been identified in products sold as 'herbal incense'. These products are sold under a wide variety of names including (but not limited to) Spice, Yucatan Fire, Smoke, Sence, K2, Skunk, Space, K2 Citron, and K2 Blonde. These products may be used as an alternative to cannabis.
     No information is available on the metabolism of XLR-11 or expected blood, serum or plasma concentrations following use.
     Testing for this analyte was qualitative only. Quantitative analysis is available upon request; please contact the laboratory for more information.

     Chain of custody documentation has been maintained for the analyses performed by NMS Labs.

     Unless alternate arrangements are made by you, the remainder of the submitted specimens will be discarded six (6) weeks from the date of this report; and generated data will be discarded five (5) years from the date the analyses were performed.

## Analysis Summary and Reporting Limits:

Acode 5960B - Synthetic Cannabinoids Confirmation, Blood (Forensic) - Aortic Blood

   -Analysis by High Performance Liquid Chromatography/Tandem Mass Spectrometry (LC-MS/MS) for:

| Compound | Rpt. Limit | Compound | Rpt. Limit |
|---|---|---|---|
| A-796260 | 0.10 ng/mL | JWH-081 | 0.10 ng/mL |
| AM-1248 | 0.10 ng/mL | JWH-122 | 0.10 ng/mL |
| AM-2201 | 0.10 ng/mL | JWH-200 | 0.10 ng/mL |
| AM-2233 | 0.10 ng/mL | JWH-203 | 0.10 ng/mL |
| AM-694 | 0.10 ng/mL | JWH-210 | 0.10 ng/mL |
| JWH-018 | 0.10 ng/mL | JWH-250 | 0.10 ng/mL |
| JWH-018 5-chloropentyl | 0.10 ng/mL | RCS-4 | 0.10 ng/mL |
| JWH-019 | 0.10 ng/mL | RCS-8 | 0.10 ng/mL |
| JWH-022 | 0.10 ng/mL | UR-144 | 0.20 ng/mL |
| JWH-073 | 0.10 ng/mL | XLR-11 | 0.10 ng/mL |

Acode 9560B - Synthetic Cannabinoids Screen, Blood (Forensic) - Aortic Blood

   -Analysis by High Performance Liquid Chromatography/Tandem Mass Spectrometry (LC-MS/MS) for:

| Compound | Rpt. Limit | Compound | Rpt. Limit |
|---|---|---|---|
| A-796260 | 0.20 ng/mL | JWH-019 | 0.10 ng/mL |
| AM-1248 | 0.20 ng/mL | JWH-022 | 0.10 ng/mL |
| AM-2201 | 0.10 ng/mL | JWH-073 | 0.10 ng/mL |
| AM-2233 | 0.20 ng/mL | JWH-081 | 0.10 ng/mL |
| AM-694 | 0.10 ng/mL | JWH-122 | 0.20 ng/mL |
| JWH-018 | 0.10 ng/mL | JWH-200 | 0.20 ng/mL |
| JWH-018 5-chloropentyl | 0.10 ng/mL | JWH-203 | 0.20 ng/mL |



Workorder: 13133
Chain       11443345
Patient ID   ME# 1306402

Page 3 of 3

**Analysis Summary and Reporting Limits:**

| Compound | Rpt. Limit | Compound | Rpt. Limit |
|----------|-----------|----------|-----------|
| JWH-210 | 0.10 ng/mL | RCS-8 | 0.10 ng/mL |
| JWH-250 | 0.10 ng/mL | UR-144 | 0.10 ng/mL |
| RCS-4 | 0.10 ng/mL | XLR-11 | 0.20 ng/mL |

v. 8

# TARRANT COUNTY MEDICAL EXAMINER'S DISTRICT
## SERVING TARRANT, PARKER, & DENTON COUNTIES
### Investigator's Report

CASE #: 1306402          Tarrant          TYPE: Jurisdiction          IDENTITY: Identified

NIZAM PEERWANI, M.D.                                          MICHAEL FLOYD
CHIEF MEDICAL EXAMINER               CHIEF FORENSIC DEATH INVESTIGATOR

DECEASED: Jermaine N Darden
ADDRESS: 3232 Thannisch Ave, Fort Worth, Texas 76105
AGE: 34                    BIRTH DATE: 7/24/1978      MARITAL STATUS: Married
PHONE:                     RACE OR COLOR: Black        SEX: M
HEIGHT:                    WEIGHT:
SSN:                       MANNER OF DRESS: Boxers
OCCUPATION:
PLACE OF EMPLOYEMENT:

DATE OF DEATH: 5/16/2013             TIME OF DEATH: 17:06
PLACE OF DEATH DESCRIPTION: Hospital ER
ADDRESS OF DEATH: 1575 South Main Street, Fort Worth, Texas 76104
HOSPITALIZED: Yes
ADMIT DATE: 5/16/2013               ADMIT TIME: 17:06
ENVIRONMENT CONDITION: indoors
CHARACTERISTIC OF PREMISES: Private residence
DATE/TIME M.E. NOTIFIED: 5/16/2013 17:22
ARRIVED:
REPORTING PERSON: Janet Rogers, RN
REPORTING AGENCY: John Peter Smith Hospital
ADDRESS: 1575 South Main Street, Fort Worth, Texas 76104
PHONE: (817)702-8417
PRONOUNCED DEAD BY: Dr. Janet Rogers
PRONOUNCING AGENCY: John Peter Smith Hospital
LAST TREATED BY:
DATE/TIME OF OCCURENCE: 5/16/2013 16:30
INJURY AT WORK: N0
PLACE OF OCCURENCE: Private residence
LOCATION: 3232 Thannisch Ave., Fort Worth, Texas 76105
TRAUMA RELATED: Yes
IDENTIFIED BY: Kyle Finney
IDENTIFICATION TYPE: Visual
DATE/TIME OF IDENTIFICATION: 5/16/2013  Time: 21:45
IDENTIFICATION STATUS: Positive ID
COMMENTS:
ADDRESS:
PHONE:

NEXT OF KIN NOTIFICATION DATE/TIME: 5/16/2013 21:45
NOTIFIED BY: FDI Kyle Finney
NOTIFYING AGENCY: TCME
NEXT OF KIN NAME: Donneika Goodacre
RELATIONSHIP: Wife
COMMENTS:
ADDRESS: , Fort Worth, 76105 Texas
PHONE: (682)365-7263
BODY TO:                              CONVEYANCE: Accucare
FUNERAL HOME:

## TARRANT COUNTY MEDICAL EXAMINER'S DISTRICT
## SERVING TARRANT, PARKER, & DENTON COUNTIES

### INVESTIGATOR'S REPORT

NIZAM PEERWANI, M.D.                              MICHAEL FLOYD
CHIEF MEDICAL EXAMINER                   CHIEF FORENSIC DEATH INVESTIGATOR
Case Number: 1306402                              Case Type: Jurisdiction

DECEDENT'S NAME: Jermaine N Darden                              AGE: 34
ADDRESS: 3232 Thannisch Ave, Fort Worth, Texas 76105
BIRTH DATE: 7/24/1978          MARITAL STATUS: Married          PHONE:

CASE NO. 1306402 Tarrant

The decedent is a 34-year-old black male who became unresponsive after being tasered twice by the Fort Worth Police Department. Fort Worth Police Detective Roloff advises that their agency deployed an X2 taser twice on the decedent when he became physically non-compliant to their instructions while serving a narcotics search warrant.
Total # of photos: 0

DESCRIPTION OF BODY:

The body was viewed at the TCME. The decedent presents as a black male, clad in boxer shorts and is cool to the touch, rigor mortis is developing, lividity could not be observed and there was evidence of invasive medical intervention. There were two small defects observed on the middle of the decedents back.

MEDICAL HISTORY:

The decedent's brother advises that the decedent has a history of hypertension. Detective Roloff advises the decedent stated that he had asthma after being tasered the second time and that he was experiencing labored breathing. Melissa of the John Peter Smith Hospital states that there was no admit fluid drawn upon admission and that Epinephrine and Narcan was administered to the decedent while CPR was being administered. Medical records from John Peter Smith Hospital were sent with the decedent and included with the case file.

DETAILS OF INCIDENT:

Micki Hayden, RN of the John Peter Smith Hospital reported that on 5/16/2013 at approximately 1706 hours the decedent was admitted to their emergency room with CPR in progress after allegedly being tasered by the Fort Worth Police Department while serving a narcotics warrant and that the decedent was pronounced at 1709 hours.

Detective Roloff of the Fort Worth Police Department advises that on 5/16/2013 at approximately 1600 hours their department executed a narcotics search warrant at a residence. The decedent was ordered to the ground inside the residence by officers, to which he initially complied. Roloff advises that an officer who weighs approximately 140 lbs. attempted to handcuff the decedent, the decedent became physically non-compliant and stood up with the officer on the decedent's back. Roloff says that a second officer attempted to assist but the decedent continued to walk towards an adjacent room, while struggling with the officers. Roloff states that an officer deployed a Taser Model X2 on the decedent for a five second cycle. The decedent initially began to comply with the officers instructions but stood up again and continued to walk into an adjacent room. A second five second cycle was deployed and the decedent went to the ground and was handcuffed. Roloff states that the

Case No. 1306402 Tarrant County Medical Examiner's Office

decedent was still conscious and complained that he had asthma and began to have labored breathing and the decedent then became unresponsive. EMS services were called to the scene and transported the decedent to John Peter Smith Hospital where he was pronounced.

This investigator spoke with the decedent's mother, Donna Randle, who advises that she was on scene at the residence and positively identified the decedent.

This investigator spoke with the decedent's mother and advised her of TCME protocols.

**Instrument Causing Injury:**
Taser                                    Model                                    X2


**ORGAN TISSUE DONOR:**
There is no signed consent form to allow harvesting of organs or tissue.


FOLLOW UP INVESTIGATIONS REQUIRED

No follow-up investigation is needed at this time.

COMMENTS:

There was no property to be removed from the decedent.


Kyle P. Finney

# TARRANT COUNTY MEDICAL EXAMINER'S DISTRICT
## SERVING TARRANT, PARKER, & DENTON COUNTIES
### Investigator's Report

CASE #: 1306402        Tarrant      TYPE: Jurisdiction         IDENTITY: Identified

NIZAM PEERWANI, M.D.                                          MICHAEL FLOYD
CHIEF MEDICAL EXAMINER              CHIEF FORENSIC DEATH INVESTIGATOR

NAME OF RELEASING AUTHORITY:

RELATIONSHIP:

DISPOSITION OF PROPERTY:


MEDICAL INVESTIGATOR:
 Kyle Finney